IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-00324-WDM-KLM

PRINCE LIONHEART, INC.,

     Plaintiff,

v.

HALO INNOVATIONS, INC.,

     Defendant.

---

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

---

Miller, J.

     This matter is before me on Defendant's motion for summary judgment based on laches and estoppel filed July 5, 2007 (Docket No. 45); Defendant's second motion for summary judgment based on abandonment filed October 9, 2007 (Docket No.113); Plaintiff's motion for summary judgment on Defendant's counterclaims filed August 8, 2007 (Docket No. 64); and Defendant's motion for sanctions filed August 7, 2007 (Docket No. 67) .  After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required.  For the reasons that follow, all motions for summary judgment will be denied as well as Defendant's motion for sanctions.

### Background[1]

     This action arises out of the use of trademarks on products that are designed to

---

[1]  The following facts are taken from the parties' Statements of Undisputed Facts in their pleadings.

PDF Final

keep an infant from suffering from Sudden Infant Death Syndrome (SIDS).  According to the parties, there is significant scientific evidence that SIDS is caused, at least to some degree, by "re-breathing" or breathing in air that contains a high amount of carbon dioxide.  Re-breathing can be caused by an infant sleeping on its stomach or by an infant being covered by blankets during sleep.  To address these problems, there is a wide array of products on the market designed to either prevent a child from rolling onto their stomach during sleep or eliminate the need to cover infants in blankets.  One of these products is a wearable blanket—a piece of clothing with a top half that resembles a shirt or tank top and bottom half that resembles a sleeping bag.  Both Plaintiff and Defendant manufacture such SIDS related products.

In 1992 an American Academy of Pediatrics task force on the effect of infant sleep positions on SIDS recommended that infants should sleep on their backs or sides to reduce the risk of SIDS.  Thereafter, in 1994, the American Academy of Pediatrics, the National Institute of Child Health and Human Development, and the SIDS Alliance (collectively, the "Partnership") joined together to launch "Back to Sleep," a national campaign designed to educate the public that infants should sleep on their sides or backs to reduce the risk of SIDS.  As part of the campaign the Partnership developed a logo ("Partnership Logo") that included a depiction of an infant sleeping on its back with the words "Back to Sleep" below.  Nonetheless, in 1998, Plaintiff received U.S. Trademark Registration No. 2,139,780 ("780 Trademark" or "780 Registration") for the phrase "Back to Sleep" in connection with "infant positioners consisting of flexible belts attached to diaper covers with hook-and-loop fasteners."  Plaintiff initially used this

mark primarily on its infant sleep positioner but later used the mark in connection with other SIDS prevention products.

Both Plaintiff and Defendant manufacture wearable blankets. Plaintiff's is called the Back to Sleep® Sack. Plaintiff uses the 780 Trademark on both its infant positioning system, for which registration was sought, and its Back to Sleep® Sack. Defendant's version of the wearable blanket is called the SleepSack™, which, according to Defendant, it has marketed since 2000. From 2000 until recently, the SleepSack™ had the Partnership Logo on the front of the garment to the left of the zipper. Defendant alleges that it obtained oral permission from the National Institute of Child Health and Human Development, the coordinator of the Partnership's Back to Sleep campaign, to use the Partnership Logo. Recently, Defendant has decided to begin using the phrase "Back is Best" instead of "Back to Sleep" on their SleepSack™. At least three other companies manufacture wearable blankets: the "Sleep Cozy" is made by Babylicious, Gustav and Maxwell produce "Sleepbags;" and Kalencom makes the "Cozi-bag."

On December 24, 2001 Plaintiff notified Defendant by letter of the 780 Registration and demanded that Defendant immediately stop using the "Back to Sleep" message on its wearable blankets. After receiving no response for three months Plaintiff sent a follow up letter on March 27, 2002. In response, Defendant sent a letter on April 15, 2002 advising Plaintiff that the Back to Sleep message on the SleepSack™ was used as part of the Partnership Logo which Defendant had obtained permission to use. Defendant further stated that it believed that the Partnership had superior rights to

the phrase and, therefore, Defendant's use was not infringing.  Approximately sixteen months later, on August 22, 2003, Plaintiff sent another letter to Defendant reiterating its belief that Defendant's use of the phrase was infringing and again demanding that Defendant stop using the phrase on its products.  On November 5, 2003, Defendant responded to the second letter stating that it believed that the phrase "Back to Sleep" had been in the public domain since 1994 when the Partnership launched the "Back to Sleep" campaign and that, as such, Defendant's use did not infringe on any trademark rights that Plaintiff had in the phrase.  Defendant alleges that there was no further communication between the parties until Plaintiff filed this suit in February 2006.  Plaintiff disagrees, stating that there was at least one phone call between the parties prior to litigation although not specifying the date and extent of such phone call.

Plaintiff alleges that Defendant's use of the phrase "Back to Sleep" on the SleepSack™ infringes on the 780 Trademark.  Plaintiff brings claims based on the Lanham Act including trademark infringement, trademark dilution, and unfair competition as well as state law including misappropriation of business value, the Colorado Consumer Protection Act, and intentional interference with prospective business relations.  Plaintiff seeks damages and an injunction against Defendant's use of the phrase "Back to Sleep."  Defendant asserts counterclaims under the Lanham Act and state law against Plaintiff claiming that Plaintiff's labeling of its wearable blanket as the Back to Sleep® Sack infringes on Defendant's common law trademark in the term "sleep sack."  Defendant seeks damages, an injunction against Plaintiff's use of the term "sleep sack" on its wearable blanket, a declaratory judgment that Defendant has

not violated the Lanham Act, and cancellation of the 780 Registration.

Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  "When applying this standard, [the court] view[s] the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (citing *Byers v.  City of Albuquerque*, 150 F.3d 1271, 174 (10th Cir. 1998)).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Id.* (citing *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)).  The nonmovant is given 'wide berth to prove a factual controversy exists.'"  *MacKenzie v. Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).  A mere scintilla of evidence, however, is not sufficient to create a genuine issue of material fact and survive summary judgment.  *Simms*, 165 F.3d at 1326 (quoting

*Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997)).  "Unsupported conclusory allegations . . . [also] do not create an issue of fact."  *MacKenzie*, 414 F.3d at 1273.

Discussion

I will first address all of Defendant's motions and then Plaintiff's motion.

1.    Defendant's First Motion for Summary Judgment: Laches and Estoppel

In its first summary judgment motion (Docket No. 45), Defendant argues that all of Plaintiff's claims are barred by the doctrines of laches and equitable estoppel. Defendant argues that the roughly four year delay between when Plaintiff sent its first letter to Defendant alleging trademark infringement and when Plaintiff filed this lawsuit bars Plaintiffs claims under the doctrine of laches.  Plaintiff responds that the delay in bringing suit was not an impermissible delay nor has it caused actual prejudice to Defendant and, therefore, Plaintiff's claims are not barred by laches.  As discussed below, I agree with Plaintiff that there remains a genuine issue of fact as to whether all of the requisite elements of laches are present in this case.  Alternatively, Defendant argues that Plaintiff's failure to communicate further with Defendant after Defendant responded to Plaintiff's second letter bars Plaintiff's claims under the doctrine of equitable estoppel.  Plaintiff argues that Defendant has not shown either an affirmative promise by Plaintiff nor reliance on such a promise.  As there remain issues of fact regarding whether Plaintiff's inaction reasonably misled Defendant as to Plaintiff's intent with respect to enforcing its trademark rights, Plaintiff is not estopped from bringing its infringement action.

a.    *Laches*

Laches has been described as "an equitable time limitation on a party's right to bring suit." *Boone v. Mech. Specialties Co.*, 609 F.2d 956, 958 (9th Cir. 1979). It is the "counterpart to the statute of limitations" which bars untimely actions at law. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). Application of the doctrine requires "two elements: (1) inexcusable delay in instituting suit; and (2) resulting prejudice to defendant from such delay." *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 523 (10th Cir. 1987); *accord Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 548 (10th Cir. 2000). Although laches and the statute of limitations are separate defenses, "the analogous state limitations period nonetheless plays a significant role in determining the applicability of laches." *Jarrow*, 304 F.3d at 837; *accord Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996) ("Although laches is an equitable defense, employed instead of a statutory time-bar, analogous statutes of limitations remain an important determinant in the application of a laches defense."); *Lawson v. Hayes*, 170 F.2d 741, 744 (10th Cir. 1948) ("This being an equitable action, the statutes of limitations have application only by analogy.").

Many circuits look to when a suit is filed in relation to the analogous state statute of limitations period to establish either a presumption that laches bars the claim (claim filed outside the state limitations period) or a presumption that laches does not bar the claim (claim filed within the state limitations period). *See Jarrow*, 304 F.3d at 837 ("[W]e hold that if a § 43(a) claim is filed within the analogous state limitations period, the strong presumption is that laches is inapplicable; if the claim is filed after the analogous limitations period has expired, the presumption is that laches is a bar to

suit."); *Santana Prods. V. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 138 (3d Cir.

2005) ("Once the statute of limitations has expired, the defendant 'enjoys the benefit of

a presumption of inexcusable delay and prejudice.'" (quoting *EEOC v. A&P*, 735 F.2d

69, 80 (3d Cir. 1984))); *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 793 (7th Cir.

2002) (noting that a court should refer "to analogous state statutes of limitations to

determine whether a presumption of laches should apply"); *Tandy Corp. V. Malone &*

*Hyde, Inc.*, 769 F.2d 362, 366 (6th Cir. 1985) (""[I]n the trademark context . . . if the

analogous statute of limitation has not elapsed, there is a strong presumption that

plaintiff's delay in bringing the suit for monetary relief is reasonable.  Only rarely should

laches bar a case before the analogous statute has run."). *But see De Silvio v.*

*Prudential Lines, Inc.*, 701 F.2d 13, 16 (2d Cir. 1983) (warning that the passing of the

analogous state statute of limitations does not lead to a presumption of prejudice).  The

Tenth Circuit has not expressly applied such a presumption; instead stating that, in

equitable actions, an analogous state statute of limitations period provides only

guidance in the application of a laches defense.  *See Lawson*, 170 F.2d at 744 ("This

being an equitable action, the statutes of limitations have application only by

analogy."); *Pepper v. Truitt*, 158 F.2d 246, 250 (10th Cir. 1947) ("Since this is an

equitable action, the defense of laches necessarily applies, and the statute of

limitations has relevancy by analogy only.").  The Tenth Circuit has, however, alluded

to such a presumption in a patent infringement case by stating that a presumption that

a defendant was injured by the delay arises after the statute of limitations has passed.

*Maloney-Crawford Tank Corp. v. Rocky Mtn. Natural Gas Co., Inc.*, 494 F.2d 401, 404

(10th Cir. 1974).  However, I need not determine whether a presumption of laches is appropriate in this circuit as I conclude that, regardless of the analogous state statute of limitations, there remains a genuine issue of fact whether the delay in bringing suit was reasonable, one of the necessary elements in a laches defense.

Defendant argues that laches bars Plaintiff's claims because the time from when Plaintiff first learned of Defendant's allegedly infringing use in December 2001 until this lawsuit was filed in February 2006 is not only outside the analogous state limitations[2] period but is also unreasonably long.  Plaintiff responds that it was precluded from bringing suit during those years because its bank put financial restrictions on its activities including its ability to institute a lawsuit.  Plaintiff's argument extends beyond mere financial inability to proceed with a suit against Defendant; therefore, Defendant's cited cases stating that mere financial inability is not a valid reason for delay are insufficient to grant summary judgment on the issue. *See, e.g., Leggett v. Standard Oil Co.*, 149 U.S. 287, 294 (1893); *Naxon v. Telesign Corp. v. Bunker Ramo Corp.*, 686 F.2d 1258, 1261 (7th Cir. 1982).  Although Plaintiff does not cite authority stating that a bank's restrictions on a company's activities due to financial difficulties is a valid

---

[2]  The longest analogous state statute of limitations for any of Plaintiff's claims would be three years.  *See* Colo. Rev. Stat. § 13-80-101(1)(c) (providing a three year statute of limitations for "all actions for fraud, misrepresentation, concealment, or deceit . . ."); § 13-80-102(1) (providing a three year statute of limitations for tort actions and "all actions upon liability created by federal statute where no period of limitation is provided in said federal statute"); § 6-1-115 (providing a three year limitations period for all actions brought under the Colorado Consumer Protection Act).  It is undisputed that the commencement of the suit in February 2006 is more than four years after Plaintiff had actual knowledge of the infringing activities as Plaintiff's actual knowledge is demonstrated by its December 2001 letter to Defendant alleging infringement.

excuse for delay, I conclude that this proffered reason for delay creates a genuine issue of fact as to whether the delay was reasonable.  Therefore, I need not address whether there remains an issue of fact as to any prejudice suffered by Defendant as a result of the delay.  Defendant's motion for summary judgement based on laches shall be denied.

b.    *Equitable Estoppel*

Defendant argues that equitable estoppel[3] is a separate defense that prevents a trademark owner from bringing an infringement action when the owner has acted or failed to act in such a manner and under such circumstances that indicated it was not going to enforce its rights with respect to the trademark.  *See, e.g.*, *PRL USA Holdings, Inc. v. U.S. Polo Ass'n*, __ F.3d __, 2008 WL 564970, at *3 (2d Cir. Mar. 4, 2008); *GMC v. Lanard Toys, Inc.*, 468 F.3d 405, 420 (6th Cir. 2006).  Defendant argues that the two years and six month delay[4] in initiating suit after Plaintiff sent its second letter to

---

[3]  "There is much semantic confusion in the case opinions over the distinction, if any, between 'laches,' 'estoppel by laches' and 'acquiescence.'" McCarthy on Trademarks and Unfair Competition § 31:41 (4th ed. 2008).  Therefore, the term "acquiescence" is often reserved for use "only in those cases where the trademark owner, by affirmative word or deed, conveys its implied consent to another.  That is, laches denotes a merely passive consent, while acquiescence implies an active consent." *Id.*  In this case, Defendant is asserting two separate defenses, laches and equitable estoppel, although both are premised on passive conduct by Plaintiff.  I will, however, consider both arguments.

[4]  Defendant actually argues that Plaintiff delayed four years before instituting suit, measuring from the date of the first cease and desist letter to the date suit was initiated.  However, as Defendant bases its equitable estoppel argument on the inaction of Plaintiff following the cease and desist letters, I conclude that the proper measure of delay is from the time the last cease and desist order was sent to the time suit was initiated—a period of approximately two years and six months.

Defendant is sufficient for equity to bar Plaintiff's claims.  Plaintiff responds by disputing

that estoppel can be based on inaction or silence.  Plaintiff further argues that

Defendant was not actually induced to act in a certain way by Plaintiff's delay in

initiating this suit.  After reviewing the pleadings, arguments, and evidence, I conclude

that, in light of all the circumstances, equitable estoppel does not bar Plaintiff's claims

in this case.

Defendant argues that inaction after cease and desist letters provides sufficient

grounds on which to base an equitable estoppel defense citing to the following: *GMC*,

468 F.3d at 420 (holding that estoppel requires "actual misrepresentations, affirmative

acts of misconduct, intentional misleading silence or conduct amounting to virtual

abandonment of the trademark"); *Naxon*, 686 F.2d at 1266 ("Many courts have held

that if a patentee sends a notice of infringement threatening prompt and vigorous

enforcement of the patent, and then by later inaction induces the infringer to believe

that he has abandoned objection, the patentee has committed a sufficiently misleading

act to estop his enforcement of the patent." (citations omitted)); *A.C. Aukerman Co. v.

R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992) (noting that silence

has been approved as an action inducing reliance in equitable estoppel and that the

most common situation for application of the doctrine is when "the patentee specifically

objects to the activities currently asserted as infringement in the suit and then does not

follow up for years"); *Jensen v. W. Irrigation & Mfg., Inc.*, 650 F.2d 165, 169 (9th Cir.

1980) ("If a patentee threatens an alleged infringer with prompt enforcement of the

patent and then does nothing, that action may be sufficiently misleading to induce the

alleged infringer to believe that the objection has been abandoned.").  Although

Defendant is correct in noting that inaction or silence is recognized in equitable

estoppel cases and there need not always be affirmative conduct, most courts require

some additional conduct or circumstances for equitable estoppel to bar a claim.  *See*

*GMC*, 468 F.3d at 420 (requiring that a defendant show "intentional misleading silence,

or conduct amounting to virtual abandonment of the trademark"); *Naxon*, 686 F.2d at

1266 ("Delay alone is insufficient to bar a patentee from enforcing his patent; the

plaintiff must also have conducted himself in such a way that he induced the defendant

to reasonably rely to his detriment."); *A.C. Aukerman*, 960 F.2d at 1042 ("[E]quitable

estoppel may arise where, coupled with other factors, a patentee's 'misleading conduct'

is essentially misleading inaction.  However, plaintiff's inaction must be combined with

other facts respecting the relationship or contacts between the parties to give rise to

the necessary inference that the claim against the defendant is abandoned.").  *But see*

*Jensen*, 650 F.2d at 169 ("If a patentee threatens an alleged infringer with prompt

enforcement of the patent and then does nothing, that action may be sufficiently

misleading to induce the alleged infringer to believe that the objection has been

abandoned.").  Therefore, I conclude that Defendant must demonstrate additional

circumstances that, coupled with Plaintiff's delay in instituting suit, are sufficient to

indicate that Plaintiff would not enforce its trademark rights.

A review of the undisputed facts demonstrates that a genuine issue of fact

remains whether Defendant has met this burden.  Although Plaintiff did not file suit for

approximately two years and three months after Defendant responded to the second

cease and desist letter, there was no other indication that Plaintiff did not intend to enforce its trademark rights, *i.e.*, the only conduct that Defendant asserts as grounds for its own reliance is Plaintiff's delay in initiating this infringement action.  Furthermore, Plaintiff had previously let a long period of time elapse between communications with Defendant regarding the alleged infringement—Plaintiff's first and second infringement letters were separated by approximately twenty months.  In light of the previous conduct of the parties with respect to the claims of infringement, I conclude there exists an issue of fact as to whether Defendant was reasonably mislead by Plaintiff's inaction in initiating suit for two and a half years.  Therefore, summary judgment is inappropriate based on equitable estoppel.

2.      Defendant's Second Motion for Summary Judgment: Abandonment

Defendant also moves for summary judgment that Plaintiff has abandoned its "Back to Sleep" trademark for infant positioning systems and, therefore, the 780 Registration should be cancelled.  In support, Defendant argues that Plaintiff has not used the mark in commerce since 1999 citing to the fact that Plaintiff did not sell any infant sleep positioners in the United States from September 1999 until December 2003 and made only minimal Canadian sales during this time period.  Plaintiff responds that there remains a genuine issue of fact as to whether it abandoned the mark because the Canadian sales arguably constitute "use in commerce" and Plaintiff's internal product development demonstrates that Plaintiff intended to resume use of the mark.  I agree with Plaintiff that there remains an issue of fact as to whether Plaintiff intended to resume use of the mark.

Abandonment is an affirmative defense "by which a defendant may demonstrate that a trademark plaintiff no longer holds the rights to a mark. Abandonment is trademark law's way of recognizing that 'trademark rights flow from use.'" *Cumulus Media, Inc. v. Clear Channel Communs., Inc.*, 304 F.3d 1167, 1173 (11th Cir. 2002) (quoting *Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1550 (11th Cir. 1986)). A mark is deemed abandoned when "its use has been discontinued with intent not to resume such use" or a mark has become generic though any course of conduct of the owner. 15 U.S.C. § 1127. With respect to discontinued use, the statute further provides that "[i]ntent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." *Id.* A good is "used in commerce" when "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and the goods are sold or transported in commerce." *Id.* "A putative trademark infringer thus must prove two separate elements to interpose the defense of abandonment successfully: that the plaintiff has ceased using the mark in dispute, and that he has done so with an intent not to resume its use." *Cumulus*, 304 F.3d at 1173 (citations omitted).

In this case, even assuming that Plaintiff's nonuse of the mark in the United States from September 1999 to December 2003 is sufficient to trigger a presumption

that Plaintiff abandoned the mark, Plaintiff has presented sufficient evidence to rebut the presumption and create an issue of fact as to whether it intended to resume use of the mark.[5] To demonstrate an intent to resume use of the mark, "[t]he registrant must put forth evidence with respect to what activities it engaged in during the nonuse period or what outside events occurred from which an intent to resume use during the nonuse period may reasonably be inferred." *Imperial Tobacco, Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990); *accord Gen. Healthcare Ltd. v. Qashat*, 364 F.3d 332, 337 (1st Cir. 2004) (citing *Imperial Tobacco*, 899 F.2d at 1581)). Plaintiff has presented evidence that it has developed a "second generation" infant sleep positioner at least by July 2004 on which it planned to use the mark as well as other SIDS prevention related products. Defendant argues that this development is insufficient to rebut the presumption because Plaintiff has not sold nor marketed the new infant sleep positioner. However, Plaintiff must show activities that evidence an *intent* to resume use, not actual renewed use. 15 U.S.C. § 1127. Defendant also argues that Plaintiff's evidence does not serve to rebut the presumption because the new product is different than the one originally sold under the "Back to Sleep" trademark and "uses of a mark on different goods in different courses of trade is [sic] not sufficient to rebut a presumption of abandonment." (Def.'s Mtn. at 13 (citing *Emergency One, Inc. v. Am.*

---

[5] I note that the parties dispute whether Plaintiff's use of the mark on goods sold in Canada but shipped from the United States during the alleged period of nonuse is sufficient to constitute "use in commerce" and, therefore, avoid the presumption that Plaintiff abandoned the mark. However, because I find that there exists a genuine issue of fact as to whether Plaintiff intended to abandon the mark, which would rebut any presumption, I need not determine the issues relating to Plaintiff's Canadian sales.

*FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000); *Imperial*, 899 F.3d at 1582–83)).

However, use of the mark on a different product with essentially the same function is

not a "different course of trade" but rather is within the same market area.  Therefore, I

do not think that this line of cases precludes Plaintiff's proffered evidence from

rebutting the presumption of abandonment.  As I conclude that Plaintiff has presented

sufficient evidence to create a genuine issue of fact as to whether it intended to resume

use of the mark, summary judgment is not appropriate.

3.      Defendant's Motion for Sanctions: Frivolous Claims

        Defendant moves for sanctions pursuant to Fed. R. Civ. P. 11 against Plaintiff for

asserting its trademark dilution and intentional interference of prospective business

advantage claims against Defendant.  Defendant argues that Plaintiff filed these claims

without conducting a reasonable inquiry into the validity of the claims and without

having evidentiary support for the claims or reasonable grounds for believing that

evidentiary support would be revealed by discovery.

        Fed. R. Civ. P. 11(b) provides that when a pleading is submitted to the court, the

attorney or unrepresented party certifies that:

>       to the best of the person's knowledge, information, and belief, formed after
>       an inquiry reasonable under the circumstances . . . the claims, defenses, and
>       other legal contentions are warranted by existing law or by a nonfrivolous
>       argument for extending, modifying, or reversing exiting law or for
>       establishing new law; [and] the factual contentions have evidentiary support
>       or, if specifically so identified, will likely have evidentiary support after a
>       reasonable opportunity for further investigation or discovery. . . .

A party may file a motion for sanctions for a violation of Fed. R. Civ. P. 11(b), provided

that the party serves the motion on the allegedly violating party at least twenty-one

days prior to filing with the court to allow that party to correct the violation.[6]  Fed. R.

Civ. P. 11(c)(2).  If I determine that Fed. R. Civ. P. 11(b) has been violated, I may

"impose an appropriate sanction on any attorney, law firm, or party that violated the rule

or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).

With respect to the trademark dilution claim, Defendant argues that no

reasonable attorney could have believed that the mark "Back to Sleep" was famous, as

required for a claim of trademark dilution,[7] because reasonable investigation would

have revealed that Plaintiff had sold only $70,000 worth of merchandise with the "Back

to Sleep" logo, the vast majority before 1999, and had only engaged in limited

advertisement of the mark.  Defendant also argues that both Plaintiff's President and

Plaintiff's trademark attorney admitted that the mark was not famous during

depositions.  Plaintiff responds that Defendant has not shown that Plaintiff did not have

a valid basis on which to bring the claim and argues that the mark is protected from

---

[6]  I note that, in this case, Defendant's certificate of service shows that the motion was served on Plaintiff on July 16, 2007, twenty-two days prior to the date the motion was filed in this court.  Furthermore, Defendant has indicated that it communicated with Plaintiff on at least two prior occasions regarding the propriety of the two claims.  (*See* letters dated May 10, 2007 and June 13, 2007 attached as exhibits to Def.'s Mtn.)

[7]  15 U.S.C. § 1125(c)(1) provides:
[T]he owner of a famous maker that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of the mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

PDF Final                                        17

dilution because it is "highly distinctive only to a select class or group of purchasers"

citing to *Times Mirror Magazines v. Las Vegas Sports News*, 212 F.3d 157, 164 (3d Cir.

2000). (Resp. at 6.) Plaintiff also disagrees with Defendant's characterization of

deposition testimony by Plaintiff's President and trademark attorney. I agree with

Plaintiff that sanctions are not warranted in this case.

Although Plaintiff does not engage in an analysis of the factors relating to a

determination that a mark is famous,[8] I conclude that an objective attorney could

_____

[8]  Prior to revision on October 6, 2006 the factors were:
(A)   the degree of inherent or acquired distinctiveness of the mark;
(B)   the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
(C)   the duration and extent of advertising and publicity of the mark;
(D)   the geographical extent of the trading area in which the mark is used;
(E)   the channels of trade for the goods or services with which the mark is used;
(F)   the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;
(G)   the nature and extent of use of the same or similar marks by third parties; and
(H)   whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.
15 U.S.C. § 1125(c)(1) (effective Nov. 29, 1999 to Oct. 6, 2006).

The most recent version of the statute provides that whether a mark is famous is to be determined by all relevant factors including the following:
(i)    The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
(ii)   The amount, volume, and geographic extent of sales of goods or services offered under the mark.
(iii)  The extent of actual recognition of the mark.
(iv)  Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.
15 U.S.C. § 1125(c)(2)(A) (2008).

PDF Final                                                      18

reasonably have thought that trademark dilution was a valid claim for relief.  The Third

Circuit has expressly held that a mark is protected from dilution if the mark "possesses

a high degree of fame in its niche market" provided that "both the plaintiff and

defendant are operating in the same or related markets."  *Times Mirror Magazines*, 212

F.3d at 164.  I do note, however, that although not binding in this circuit, Judge Lewis

T. Babcock, my colleague in the U.S. Court for the District of Colorado, has held that

"certain distinctiveness in [a] narrow market" is insufficient to warrant protection under

15 U.S.C. § 1125(c).  *King of Mtn. Sports, inc. V. Chrysler Corp.*, 968 F.Supp. 568,

577–78 (D. Colo. 1997).  Given the holding in the Third Circuit and the non-binding

status of the district court case, I conclude that a claim of trademark dilution for a mark

that is allegedly famous in a niche market is not so unreasonable so as to be

considered frivolous.  In this case, the registration of the mark combined with sales of

good with the mark in a niche market and the presence of both Plaintiff and Defendant

in the same niche market provide sufficient basis on which to reasonably base a

dilution claim under the Third Circuit precedent.

Furthermore, I disagree with Defendant's characterization of deposition

statements made by Plaintiff's President and trademark attorney.  As Plaintiff properly

notes, Plaintiff's president merely stated that number of sales, approximately $70,000,

did not alone cause the mark to be famous; he did not state that the mark was not

famous.  Likewise, Plaintiff's trademark attorney's admission that he has never

represented a client with a famous mark was not directly in reference to the "Back to

Sleep" mark and was immediately followed by a statement that he did not know if the

"Back to Sleep" mark was famous.

With respect to the intentional interference of prospective business advantage claim, Defendant asserts that Plaintiff has no evidence that Defendant "interfered with any customers, prospective customers, contracts, or prospective contracts."[9]  (Mtn. at 7.)  Plaintiff responds that the basis for this claim is that its negotiations with Babies 'R Us, a company that exclusively sold Defendant's wearable blankets, were "suddenly and strangely" terminated.  Given Plaintiff's experience with a retailer that was previously exclusively selling Defendant's wearable blankets, I do not find it unreasonable for Plaintiff to make a claim for intentional interference with prospective business advantage.  Plaintiff's detailed description of its negotiations with Babies 'R Us allows a reasonable inference that the other company selling the product may have interfered with the negotiation process.  I note that Plaintiff's negotiations included adjustment of Plaintiff's packaging to match Defendant's packaging so that they could be displayed on the same shelf.  Therefore, although Plaintiff's claims may not be sufficient to survive a motion to dismiss or a motion for summary judgment, sanctions

---

[9]  Colorado recognizes a claim for intentional interference with prospective business and bases it on the Restatement (Second) of Torts.  *See Amoco Oil Co. v. Erwin*, 908 P.2d 493, 500 (Colo. 1995).  The tort is defined as:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation. Tortious interference with a prospective business relation requires a showing of intentional and improper interference preventing formation of a contract.

*Id.*  (citing Restatement (Second) of Torts § 766B (1979)).

pursuant to Fed. R. Civ. P. 11 are not warranted in this case.  Defendant's motion for sanctions (Docket No. 67) shall be denied.

4.      Plaintiff's Motion for Summary Judgment: Distinctiveness of Mark

Plaintiff argues that Defendant's trademark infringement related cross-claims are barred because Defendant does not have a valid trademark in the term "sleep sack" because such phrase is merely descriptive and, therefore, Plaintiff's use constitutes fair use.  Defendant responds that the there is a genuine issues of fact as to (1) whether the phrase[10] "sleep sack" is suggestive, descriptive, or generic; (2) whether the phrase has acquired secondary meaning; and (3) whether Plaintiff's use of the phrase "sleep sack" is in good faith.  As I agree with Defendant that there remains an issue of fact as to whether the phrase has acquired secondary meaning and if Plaintiff's use constitutes fair use, Plaintiff's motion for summary judgment shall be denied.[11]

Only inherently distinctive trademarks or those that have acquired secondary meaning are protectable under the Lanham Act.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768–69 (1992); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1369 (10th Cir. 1977).  Marks are generally categorized into five categories based on their inherent level of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful.  *Two Pesos*, 505 U.S. at 768.  Marks that

---

[10]  I note that Defendant uses the phrase as a single word: "SleepSack™" while Plaintiff uses the phrase as two separate words: "Back to Sleep® Sack."

[11]  As I find that Plaintiff's motion should be denied based on issues of fact relating to secondary meaning and fair use, I decline to address whether the phrase is suggestive, descriptive, or generic.

are suggestive, arbitrary, or fanciful are considered inherently distinctive and are entitled to protection. *Id.* Marks that are generic are "those that 'refe[r] to the genus of which the particular product is a species'" and are never afforded protection. *Id.* (alternation in original). Marks that are descriptive in nature are only protected if they have acquired "secondary meaning;" in other words, if the mark has "become distinctive of the . . . goods in commerce." *Id.* (internal quotation omitted). Generally, descriptive marks are those marks that merely describe "the qualities, ingredients, or composition of an article." *Big O Tire*, 561 F.2d at 1369. "To acquire secondary meaning, a descriptive mark must have been used so long and so exclusively by one producer with reference to his goods or articles that, in that trade and to that branch of the purchasing public, the mark has come to mean that the article is his product." *J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467, 1470 (10th Cir. 1985) (internal quotations omitted); *accord Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1218 (10th Cir. 2004) ("Secondary meaning exists only if most consumers have come to think of the word as not descriptive at all but as the name of the product or service." (internal quotations omitted)).

Assuming for purposes of this Order that the phrase "sleep sack" is merely descriptive and not suggestive,[12] it is not protectable unless it has acquired secondary

---

[12]   Regardless of whether I conclude the mark is merely descriptive or that there is a genuine issue of fact regarding the classification of the phrase as descriptive or suggestive, I would still need to engage in the secondary meaning and fair use analyses. Therefore, for efficiency purposes, I will assume for purposes of this motion that the phrase is descriptive.

I also note that Plaintiff argued that the phrase is generic. However, as Defendant has come forth with evidence refuting Plaintiff's allegation that others in the

meaning. Existence of secondary meaning may be established by direct evidence including "consumer surveys or testimony from consumers." *Donchez*, 392 F.3d at 1218 (quoting *Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 20 (1st Cir. 2004)). Or, a plaintiff may use circumstantial evidence to establish secondary meaning such as "(1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture." *Id.* (quoting *Flynn*, 377 F.3d at 20); *accord Metro Brokers, Inc. v. Tann*, 815 F.Supp. 377, 382 (D. Colo. 1993) ("Whether a term has acquired secondary meaning depends on: (1) the length and manner of its use; (2) the nature and extent of the plaintiff's advertising, promotion, and sales; (3) the plaintiff's efforts to promote a conscious connection in the public's mind between his name and the plaintiff's business; and (4) the extent to which the public actually identifies the name with the plaintiff's business."). With respect to these elements, Defendant has provided evidence that it has (1) used the mark since 2000 on its wearable blankets; (2) had millions of dollars worth of sales of the wearable blankets including $5.7 million in 2006, spent over $1.2 million in advertising including national advertisements in magazines and educational materials, and sold the product through national retailers, websites, and catalogues; and (3) promoted its product with the mark in a variety of advertising manners. I conclude that this circumstantial evidence is sufficient to create a genuine issue of fact as to whether

---

industry call their wearable blankets "sleep sacks," and Plaintiff did not address this issue in its reply, I conclude that there remains no genuine issue of fact as to whether the phrase is generic.

the term "sleep sack" has acquired secondary meaning.

Plaintiff also claims that it is entitled to summary judgment on Defendant's infringement claims because its use constitutes fair use. 15 U.S.C. § 1115(b)(4) provides that it shall be a defense to an infringement action "[t]hat the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." Plaintiff argues that because "sleep sack" is a descriptive term and Plaintiff is merely using the term to describe its product it has not infringed on any trademark rights that Defendant may have with respect to the phrase "sleep sack." Defendant responds that summary judgment is inappropriate on this issue as there remains an issue of fact as to whether Plaintiff's use of the phrase "sleep sack" on its wearable blanket was in good faith. Fair use permits a descriptive mark to be used by someone other than the trademark owner to describe the product, but does not permit the use of a mark as a trademark. *Vail Assocs., Inc. v. Vent-Tel-Co., Ltd.*, 516 F.3d 853, 866 (10th Cir. 2007) ("Secondary meaning provides the mark holder 'an exclusive right not in the original, descriptive sense, but only the secondary one associated with the mark holder's goods."); *Beer Nuts v. Clover Club Foods Co.*, 711 F.2d 934, 937 (10th Cir. 1983) ("The 'fair use' defense permits the use of a name or term, other than as a trademark, that is descriptive and is used fairly and in good faith only to describe the goods." (citing 15 U.S.C. § 1115(b)(4))). Given Plaintiff's alleged knowledge of

Defendant's use of the phrase since 2000 and the prominence and placement of the term "sleep sack" on a separate line than "Back to" on Plaintiff's packaging, it is unclear if Plaintiff is using the phrase "sleep sack" as a description of the wearable blanket or is attempting to associate its good with Defendant's wearable blanket.  Therefore, there remains a genuine issue of fact as to whether Plaintiff's use of the phrase is merely descriptive or is used as a trademark.

Accordingly, it is ordered:

1.      Defendant's first motion for summary judgment (Docket No. 45) is denied.

2.      Defendant's second motion for summary judgment (Docket No. 113) is denied.

3.      Defendant's motion for sanctions (Docket No. 67) is denied.

4.      Plaintiff's motion for summary judgment (Docket No. 64) is denied.

DATED at Denver, Colorado, on March 28, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge