IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00324-WDM-KLM

PRINCE LIONHEART, INC., a California Corporation

 Plaintiff,

v.

HALO INNOVATIONS, INC., a Minnesota Corporation

 Defendant.

---

**PROPOSED JURY INSTRUCTIONS**
**(submitted by Halo Innovations, Inc.)**

---

## **TABLE OF INSTRUCTIONS**

JURY INSTRUCTION NO. 1:  JURY DUTIES, ETC ........................................................ 4

JURY INSTRUCTION NO. 2:  DUTIES OF JURY INSTRUCTION ................................ 9

JURY INSTRUCTION NO. 3:  JURY COMMUNICATION INSTRUCTION .................. 11

JURY INSTRUCTION NO. 4:  RESOLUTION OF FACTUAL ISSUES
       INSTRUCTION ................................................................................................ 13

JURY INSTRUCTION NO. 5:  IMPEACHMENT INSTRUCTION ................................ 14

JURY INSTRUCTION NO. 6:  EXPERT OPINION INSTRUCTION ............................ 15

JURY INSTRUCTION NO. 7:  UNANIMOUS VERDICT INSTRUCTION ..................... 16

JURY INSTRUCTION NO. 8:  FORE PERSON AND VERDICT
       INSTRUCTION ................................................................................................ 17

JURY INSTRUCTION NO. 9:  OVERVIEW OF CLAIMS ............................................. 18

JURY INSTRUCTION NO. 10:  TRADEMARK INFRINGEMENT
       TRADEMARK DEFINITION ............................................................................. 20

JURY INSTRUCTION NO. 11:  TRADEMARK INFRINGEMENT-
       GENERAL ELEMENTS AND BURDENS (PRINCE LIONHEART) .................... 22

JURY INSTRUCTION NO. 12:  TRADEMARK REGISTRATION ................................. 23

JURY INSTRUCTION NO. 13:  TRADEMARK INCONTESTIBILITY ........................... 24

JURY INSTRUCTION NO. 14:  USE IN COMMERCE ................................................ 25

JURY INSTRUCTION NO. 15:  CONTINUOUS USE IN COMMERCE ........................ 27

JURY INSTRUCTION NO. 16:  FRAUD ...................................................................... 28

JURY INSTRUCTION NO. 17:   DEFENSES TO TRADEMARK
       INFRINGMENT -  FAIR USE ........................................................................... 29

JURY INSTRUCTION NO. 18:  ABANDONMENT ...................................................... 32

JURY INSTRUCTION NO. 19:  PRIOR USE .............................................................. 34

JURY INSTRUCTION NO. 20:  LACHES .................................................................... 36

JURY INSTRUCTION NO. 21:  UNCLEAN HANDS ................................................... 37

JURY INSTRUCTION NO. 22:  TRADEMARK INFRINGEMENT -
       GENERAL ELEMENTS AND BURDENS (HALO INNOVATIONS) ................... 3<u>8</u>

JURY INSTRUCTION NO. 23:  VALIDITY OF UNREGISTERED
       TRADEMARK .................................................................................................. 39

JURY INSTRUCTION NO. 24:  STRENGTH OF UNREGISTERED
    TRADEMARK (SPECTRUM OF MARKS).......................................................... 41

JURY INSTRUCTION NO. 25:  STRENGTH OF UNREGISTERED
    TRADEMARK (MARK DISTINCTIVENESS AND VALIDITY)............................. 46

JURY INSTRUCTION NO. 26:  LIKELIHOOD OF CONFUSION ................................. 48

JURY INSTRUCTION NO. 27:  TRADEMARK DILUTION GENERALLY...................... 55

JURY INSTRUCTION NO. 28:  FAME ......................................................................... 56

JURY INSTRUCTION NO. 29:  DILUTION BY BLURING............................................ 58

JURY INSTRUCTION NO. 30:  DILUTION DAMAGES................................................ 60

JURY INSTRUCTION NO. 31:  INTENTIONAL INTERFERENCE WITH
    PROSPECTIVE BUSINESS................................................................................ 61

JURY INSTRUCTION NO. 32:  COLORADO CONSUMER PROTECTION
    ACT_ELEMENTS OF LIABILITY......................................................................... 64

JURY INSTRUCTION NO. 33:  MEASURE OF DAMAGES
    INSTRUCTION.................................................................................................... 66

JURY INSTRUCTION NO. 34:  DETERMINATION OF DAMAGES
    INSTRUCTION.................................................................................................... 67

JURY INSTRUCTION NO. 35:  TRADEMARK DAMAGES – ACTUAL OR
    STATUTORY NOTICE ........................................................................................ 68

JURY INSTRUCTION NO. 36:  TRADEMARK DAMAGES – TRADEMARK
    OWNER'S ACTUAL DAMAGES.......................................................................... 69

JURY INSTRUCTION NO. 37:  TRADEMARK DAMAGES, INTENTIONAL
    INFRINGEMENT ................................................................................................ 71

JURY INSTRUCTION NO. 38:  TRADEMARK DAMAGES –
    DEFENDANT'S PROFITS................................................................................... 72

JURY INSTRUCTION NO. 39:  FALSE REGISTRATION ............................................ 73

JURY INSTRUCTION NO. 40:  INTENTIONAL INTERFERENCE WITH
    PROSPECTIVE BUSINESS DAMAGES ............................................................. 74

JURY INSTRUCTION NO. 41:  COLORADO CONSUMER PROTENTION
    ACT DAMAGES ................................................................................................. 75

JURY INSTRUCTION NO. 42:  COLORADO CONSUMER PROTECTION
    ACT BAD FAITH.................................................................................................. 77

**JURY INSTRUCTION NO. 1:  JURY DUTIES, ETC.
INSTRUCTION**

Members of the jury:

Now, I will give you some preliminary instructions to guide you in your participation in the trial.

**Duty of Jury**

It will be your duty to find from the evidence what the facts are.  You, and you alone, are the judges of the facts. You will then have to apply to those facts the law as I, the court, will give it to you. You must follow that law whether you agree with it or not.

Nothing I may say or do during the course of the trial is intended to indicate, or should be taken by you as indicating, what your verdict should be.

**Evidence**

The evidence from which you will find the facts will consist of the testimony of witnesses, documents and other things received into the record as exhibits, and any facts the lawyers agree or stipulate to, or that I may instruct you to find.

Generally, there are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. You may consider both kinds of evidence and determine how much weight to give it.

It will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject. I will give you some guidelines for determining the credibility of witnesses at the end of the case.

Judge the evidence just like any reasonable and careful person would treat an important question that must be resolved by examining facts, opinions and other evidence. Use your good sense in considering and evaluating the evidence. Give it a reasonable and fair interpretation in light of your life experiences and knowledge of people and their tendencies. You are not limited solely to the admitted evidence itself as you may also make inferences and reach conclusions that reason and common sense leads you to draw from that evidence.

Certain things are not evidence and must not be considered by you:

1. Statements, arguments and questions by lawyers are not evidence.

2. Objections to questions are not evidence. Lawyers have an obligation to their clients to make an objection when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by my ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is admitted for a limited purpose only, you must follow that instruction.

3. Testimony that I have excluded or told you to disregard is not evidence and must not be considered.

4. Anything you may have seen or heard outside the courtroom is not evidence. You are to decide the case solely on the evidence presented here in the courtroom.

**Burden of Proof**

This is a civil case. The party asserting a claim has the burden of proving its case by what is called the preponderance of the evidence. That means the party asserting a claim has to produce evidence which, considered in the light of all the facts, leads you to believe that what the party claims is more likely true than not. To put it differently, if you were to put the party asserting the claim's and party defending against the claim's evidence on opposite sides of the scales, the party asserting the claim would have to make the scales tip somewhat on its side. If party asserting the claim fails to meet this burden, the verdict must be for the party defending against that claim.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case and you should therefore put it out of your mind.

**Conduct by the Jury**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone, including yourselves and your families, or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. Should anyone try to talk to you about it, bring it to my attention promptly. When you are deliberating you may discuss the case only when all of you are present.

Second, do not read or listen to anything touching on this case in any way.

Should anyone try to give you anything about this case, or if you inadvertently

6

hear or see something about it, bring it to my attention promptly.

Third, do not research or investigate the case on your own.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberation at the end of the case.

If you wish, you may take notes to help your recollection. If you do, leave them in the jury room when you leave at night. And remember that they are for your own personal use--they are not to be given or read to anyone else.

## Course of the Trial

The trial will now begin. First, plaintiff, Prince Lionheart, will make an opening statement. An opening statement is neither evidence nor argument; it is an outline of what that party intends to prove, offered to help you follow the evidence. The defendant, Halo Innovations', attorney will also make an opening statement.

Prince Lionheart will then present its witnesses, and Halo Innovations may cross-examine them. Next Halo Innovations will present its witnesses, and the Prince Lionheart may cross-examine them. Then Prince Lionheart will have a final opportunity to present some rebuttal evidence, again subject to Halo Innovation's cross-examination.   After Prince Lionheart's rebuttal, Halo Innovations will have a final opportunity to present rebuttal evidence for its case subject to Halo Innovation's cross-examination.

After that, the attorneys will make their closing arguments to summarize and interpret the evidence for you. Those will be followed by further instructions on the law.

You will then retire to deliberate on your verdict.

<u>Authority:</u>

- Judge Walker Miller's Form Instructions.

**JURY INSTRUCTION NO. 2:  DUTIES OF JURY INSTRUCTION**

MEMBERS OF THE JURY:

Now that you have heard the evidence and the argument, it becomes my duty to supplement the introductory instructions on the law governing this case. It is your duty as jurors to follow the law as I state it. You will then apply that law to the facts as you find them from the evidence. You are not to single out one instruction alone as stating the law, but must consider the introductory and these instructions as a whole.

You are not to be concerned with the wisdom of any rule of law stated by me. It would be a violation of your oath to base your verdict on anything other than the law as presented in these instructions and the facts as you find them. Counsel may properly refer to some of the governing rules of law in their arguments. If, however, there is any difference between the law as stated by counsel and that stated by me in these instructions, you are governed by my instructions.

As members of the jury, you are the sole and exclusive judges of the facts. You judge the evidence. You determine what evidence to believe. You resolve conflicts in the testimony. Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of the case, or what that opinion is. It is not my function to determine the facts; it is yours. If any reference to evidence by counsel is not consistent with your own recollection of that evidence it is your recollection that controls.

You must perform your duties as jurors without bias or prejudice as to any party.

The law does not permit you to be governed by sympathy, prejudice or public opinion. The court and the parties expect that you will carefully and impartially consider

all the evidence, follow the law as it has been given to you, and reach a just verdict, regardless of the consequences.

---

Authority:

- Judge Walker Miller's Form Instructions.

**JURY INSTRUCTION NO. 3:  JURY COMMUNICATION INSTRUCTION**

I do not invite communications from you, but if it becomes necessary during your deliberations to communicate with the court, you may send a note by the court security officer, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with the court by any means other than a signed writing, and the court will never communicate with any member of the jury on any subject touching the merits of the case other than in writing, or orally here in open court. Upon receipt of a note from you, I will need to convene a meeting with counsel to discuss your question or request. It may well take considerable time and effort to respond.

You will note from the oath about to be taken by the court security officer that he or she, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case. Let me know immediately if anyone attempts any such communication.

Bear in mind also that you are never to reveal to any person--not even to the court--how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.

You are the sole judges of the credibility of the witnesses and the weight to be given their testimony. You should take into consideration their means of knowledge, strength of memory and opportunities for observation; the reasonableness or unreasonableness of their testimony; the consistency or lack of consistency in their testimony; their motives; their intelligence; their ability to observe the matters about

which they have testified; whether their testimony has been contradicted or supported by other evidence; their bias, prejudice or interests, if any; their manner or demeanor upon the witness stand; and all other facts and circumstances shown by the evidence which affect the credibility of the witnesses.

Based on these considerations, you may believe all, part or none of the testimony of a witness and you may give the testimony such weight, if any, as you think it deserves.

---

Authority:

- Judge Walker Miller's Form Instructions.

**JURY INSTRUCTION NO. 4:  RESOLUTION OF FACTUAL ISSUES INSTRUCTION**

You should not resolve factual issues in the case solely by adding up the number of witnesses who testify on each side of a certain issue. If the jurors believe the testimony of a single witness who testifies about a disputed event, such testimony is enough for you to resolve the factual dispute in accordance with this single witness's version of the event, even though a number of witnesses may have testified to the contrary.

The test is not which side brings the greater number of witnesses, or presents the greater quantity of evidence; the test, rather, is which witness or witnesses, and which evidence, appeals to your minds as being most accurate, believable, and otherwise trustworthy.

Authority:

- Judge Walker Miller's Form Instructions.

### JURY INSTRUCTION NO. 5:  IMPEACHMENT INSTRUCTION

A witness may be discredited or impeached by contradictory evidence, or by evidence that at some other time the witness has said or done something, or has failed to say or do something which is inconsistent with the witness's present testimony.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars and you may reject part or all of the testimony of that witness or give it such weight as you may think it deserves.

---

Authority:

- Judge Walker Miller's Form Instructions.

**JURY INSTRUCTION NO. 6:  EXPERT OPINION INSTRUCTION**

Normally the law does not permit witnesses to testify as to their opinions or conclusions about the issues of the trial. An exception to this rule is a person who qualifies as an expert witness. A qualified expert witness has special knowledge, skill, training, education or experience in some area and may give his or her opinion on matters in that area as well as the reasons for that opinion.

Expert testimony should be considered just like any other testimony. You may accept or reject it and give it such weight as you think it deserves, considering the witness' education and experience, soundness of reasons given for the opinion, the acceptability of the methods used and all other evidence in the case.

---

Authority:

- Judge Walker Miller's Form Instructions.

**JURY INSTRUCTION NO. 7:  UNANIMOUS VERDICT INSTRUCTION**

The verdict must be unanimous and represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges -- judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

---

Authority:

- Judge Walker Miller's Form Instructions.

**JURY INSTRUCTION NO. 8:  FORE PERSON AND VERDICT INSTRUCTION**

Upon retiring to the jury room, you shall select one of your number to act as your foreperson. The foreperson will preside over your deliberations and be your spokesperson here in court. Verdict forms have been prepared for your convenience to take to the jury room.

You will note that the forms include a number of interrogatories or questions which call for a "yes" or "no" answer. The answer to each question must be the unanimous answer of the jury. Your foreperson will write the unanimous answer of the jury in the space provided for each response. As you will note from the wording of the questions, it may not be necessary to consider or answer every question.

When you have completed the verdict form, the foreperson will sign and date the form, which should be brought to the courtroom when you return.

---

<u>Authority:</u>

- Judge Walker Miller's Form Instructions.

**JURY INSTRUCTION NO. 9:  OVERVIEW OF CLAIMS**

This case involves an action brought by Prince Lionheart, Inc. against Halo Innovations, Inc.  Prince Lionheart registered its BACK TO SLEEP mark with the United States Patent and Trademark Office for use on an infant positioner consisting of flexible belts attached to diaper covers with hook-and-loop fasteners.  Halo placed BACK TO SLEEP on its wearable blanket.

Prince Lionheart brings several claims against Halo Innovations.   Prince Lionheart claims that Halo Innovations has infringed on its BACK TO SLEEP trademark and has diluted the BACK TO SLEEP trademark in violation of federal statute.  Prince Lionheart also claims that Halo Innovations interfered with prospective business advantage and violated the Colorado Consumer Protection Act by using the BACK TO SLEEP trademark on its wearable blankets.

Halo denies infringing or diluting the BACK TO SLEEP trademark and contends the trademark is invalid and was maintained through fraud and denies interfering with Prince Lionheart's business or violating the Colorado Consumer Protection Act.

Halo Innovations brings counterclaims against Prince Lionheart.   Halo Innovations claims it has marketed and sold wearable blankets using the SleepSack mark and, by so doing, SleepSack became a trademark associating Halo Innovation's wearable blanket with Halo.  Prince Lionheart has marketed and sold wearable blankets marked with SLEEPSACK.

Halo Innovations brings several different claims against Prince Lionheart.  Halo Innovations claims that Prince Lionheart has infringed its SLEEPSACK trademark in

violation of federal statute and the common law.  Halo also claims that Prince Lionheart violated the Colorado Consumer Protection Act through its use of SLEEPSACK and that Prince Lionheart has competed unfairly.

Prince Lionheart denies infringement and contends the trademark is invalid. Prince Lionheart also denies violating the Colorado Consumer Protection Act or that it has competed unfairly.

I will now instruct you on the particular rules of law which you must apply to the claims at issue in this case.  You must consider each claim separately and render a decision on each according to credible evidence and these instructions on law.

---

Authority:
- Judge Walker Miller's Form Instructions.
- Prince Lionheart's Complaint (Dkt. 1).
- Halo's Second Amended Answer and Counterclaims (Dkt. 40).

**JURY INSTRUCTION NO. 10:  TRADEMARK INFRINGEMENT TRADEMARK DEFINITION**

A trademark is a limited property right in a word, a name, a symbol or a combination thereof adopted and used by a manufacturer or merchant to identify his or her goods and to distinguish them from those manufactured or sold by others.  A trademark is only protected when it is used in public in a manner that creates an association among consumers between the mark and the mark's owner.  The ability of a trademark to distinguish the source of the goods it marks from other goods is what entitles it to protection, not its uniqueness.  The owner of a trademark has the right to exclude others from using that trademark only on goods associated with the mark.

A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace.  Rights in a trademark are obtained only through commercial use of the mark in commerce.  Registration with the United States Patent and Trademark Office is not required to have trademark rights.  Rights arising from unregistered trademarks are called "common law trademark rights".

When a manufacturer or merchant has established a trademark right by use of that trademark on, or in association with, a product before anyone else, the right to use that trademark on that product becomes an exclusive right and the mark is his or her property.  No other person can use the same or similar words, symbols, designs, or combinations thereof in any manner that would be likely to cause confusion, mistake, or deception with the trademark owner's prior developed trademark rights. This definition applies to any trademark, including registered and common law trademarks.

<u>Authority:</u>

- 15 U.S.C. §1127 (2008).
- *New Kids on the Block v. News Am. Pub., Inc.,* 971 F.2d 302 (9th Cir. 1992).
- *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159 (1995).
- *Brookfield Commc'ns. Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999).

**JURY INSTRUCTION NO. 11:  TRADEMARK INFRINGEMENT-GENERAL
ELEMENTS AND BURDENS
(PRINCE LIONHEART)**

To prevail on its trademark infringement claim, Prince Lionheart must prove each of the following elements by a preponderance of the evidence:

1.  BACK TO SLEEP is a valid and protectable trademark ; and

2.  That Prince Lionheart owns BACK TO SLEEP as a trademark for use on wearable blankets.

3.  There is a Likelihood of Confusion created by Halo's use of BACK TO SLEEP if ordinary purchasers are likely to be confused by Halo Innovations use of BACK TO SLEEP on wearable blankets into believing that Halo Innovations and Prince Lionheart are affiliated companies or that Halo Innovations' wearable blankets are sponsored, approved or licensed by Prince Lionheart or that Halo Innovations' wearable blankets are made by Prince Lionheart.

If Prince Lionheart has failed to prove any of these elements, your verdict should be for Halo Innovations on Prince Lionheart's claim.

---

Authority:
- 15 U.S.C. §1114(1) (2008).
- 15 U.S.C. §1125(a) (2008).
- *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778 (9th Cir. 2002).
- *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045 (10th Cir. 2008).
- *Central Mfg. v. Brett*, 492 F.3d 876 (7th Cir. 2007).

**JURY INSTRUCTION NO. 12:  TRADEMARK REGISTRATION**

Exhibit 4 includes a certificate of registration from the United States Patent and Trademark Office. It was submitted by Prince Lionheart as proof of the validity of the BACK TO SLEEP trademark and that Prince Lionheart owns the trademark.

The facts recited in this certificate are: that Prince Lionheart owns the BACK TO SLEEP mark for use on "infant positioners consisting of flexible belts attached to diaper covers with hook-and-loop fasteners" in International Class 26.

Prince Lionheart's registration does not establish that Prince Lionheart owns the BACK TO SLEEP trademark for use on wearable blankets or that BACK TO SLEEP is a valid trademark for use on wearable blankets.

---

Authority:
- 15 U.S.C. § 1057 (2008).
- 15. U.S.C. § 1115 (2008).
- *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352 (9th Cir. 1985).
- *In re Best Software, Inc.*, 63 U.S.P.Q.2d 1109 (T.T.A.B. 2002).
- *Park 'N Fly v. Dollar Park & Fly,* 469 U.S. 189 (1985).

**JURY INSTRUCTION NO. 13:  TRADEMARK INCONTESTIBILITY**

A trademark owner may file a sworn statement with the Patent and Trademark Office that its mark has been used continuously in commerce for five years.  Subject to defenses I will mention shortly, filing this sworn statement makes the trademark incontestable.   When a trademark is incontestable, the registration is conclusive evidence of the validity of the registered mark, the registration of the mark, the registrant's ownership of the mark and of the registrant's exclusive right to use the registered mark in commerce.  Such conclusive evidence relates only to the use of the mark on the goods identified in the registration, in this case, infant positioners consisting of flexible belts attached to diaper covers with hook-and-loop fasteners, and is not evidence that the registrant, here Prince Lionheart, has any rights to use the BACK TO SLEEP mark on any other product or service.

---

Authority:
- 15 U.S.C. § 1065 (2008).
- 15 U.S.C. § 1115 (2008).
- *In re Best Software, Inc.*, 63 U.S.P.Q.2d 1109 (T.T.A.B. 2002).
- *Natural Footwear v. Hart, Schaffner & Marx*, 760 F.2d 1383 (3d Cir. 1985).
- *Universal Nutrition Corp. v. Carbolite Foods Inc.,* 325 F. Supp. 2d 526 (D.N.J. 2004).

**JURY INSTRUCTION NO. 14:  USE IN COMMERCE**

To maintain trademark rights, trademark owners must continue to use their trademark in commerce.

"Use in commerce" means "the bona fide use of a mark in the ordinary course of trade, and not merely made to reserve a right in a mark."  A token use or use made solely to reserve rights in a mark do not qualify as a "use in commerce."  Some factors you may consider in determining if Prince Lionheart's use was a bona fide use in commerce are:

1. The amount of use;

2. Prince Lionheart's intent in making the sale;

3. The nature or quality of the transactions Prince Lionheart claims are evidence of use; and

4. What use is typical within Prince Lionheart's industry.  For example, an industry making expensive products, like large airliners, might make a few sales a year in the ordinary course of trade whereas an industry making relatively inexpensive consumer products might typically make millions of sales a year in the ordinary course of trade.

The following types of use do not qualify as "use in commerce":

1) Sporadic or nominal sales of the trademarked product;

2) Advertising a trademarked product on a website without shipments or sales of the product following the website advertisement;

3) Shipments of trademarked products to a foreign country followed only by

foreign sales of that product; and

4)     Sales of product to get rid of remaining inventory.

If you determine that Prince Lionheart was not making a bona fide use of the BACK TO SLEEP trademark as of February 20, 2004, then regardless of Prince Lionheart's intent to use the mark, Prince Lionheart's registration is invalid and cannot support Prince Lionheart's claim that it has a valid and enforceable trademark.

_____

<u>Authority:</u>
- 15 U.S.C. § 1127 (2008).
- 15 U.S.C. § 1127(b) (2008).
- T.M.E.P.5th § 901.01 (2007).
- T.M.E.P.5th § 901.02 (2007).
- *La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1272 (2d Cir. 1974).
- *S Indus., Inc. v. Ecolab Inc.*, No. 96 C 4140, 1999 U.S. Dist. LEXIS 3484, *17-18 (N.D. Ill. Mar. 16, 1999).
- *Procter & Gamble Co. v. Johnson & Johnson, Inc.*, 485 F. Supp. 1185, 1204-06 (S.D.N.Y. 1979).
- *Gen. Healthcare Ltd. v. Qashat*, 364 F.3d 332, 335 (1st Cir. 2004).
- *New England Duplicating Co. v. Mendes*, 190 F.2d 415, 418 (1st Cir. 1951).
- *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195 (11th Cir. 2001).
- J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §19:118 (4th ed. 2003).
- *Standard Brands, Inc. v. Schrage*, No. C-80-92-G, 1982 U.S. Dist. LEXIS 17594, *11 (N.D. Ga. Dec. 21, 1982).
- *Uncas Mfg. Co. v. Clark & Coombs Co.*, 309 F.2d 818, 820 (1st Cir. 1962).
- *Oshman's Sporting Goods, Inc. v. Highland Imp. Corp.*, 1990 TTAB LEXIS 38, *8 (T.T.A.B. Aug. 20, 1990).
- *MB Fin. Bank v. MB Real Estate Servs. LLC*, No. 02 C 5925, 2003 U.S. Dist. LEXIS 10578, *25 (N.D. Ill. June 23, 2003).

**JURY INSTRUCTION NO. 15:  CONTINUOUS USE IN COMMERCE**

If you determine that Prince Lionheart was not continuously using in commerce the BACK TO SLEEP trademark on the registered infant positioners consisting of flexible belts attached to diaper covers with hook-and-loop fasteners in commerce from February 20, 1999 through February 20, 2004, then regardless of Prince Lionheart's intent to resume use of the mark, Prince Lionheart's registration will not be conclusive evidence of Prince Lionheart's exclusive right to use BACK TO SLEEP on the registered infant positioners or that Prince Lionheart owns the mark or that the mark is valid.

The meaning of "use in commerce" was just explained.

---

Authority:
- 15 U.S.C § 1115(b) (2008).
- 15 U.S.C. § 1058 (2008).
- T.M.E.P.5th § 1605.03 (2007).
- T.M.E.P.5th § 1605.04 (2007).
- *Brittingham v. Jenkins*, 914 F.2d 447 (4th Cir. 1990).
- *Duffy-Mott Co., Inc. v. Cumberland Packing Co.,* 165 U.S.P.Q. 422, 1970 CCPA LEXIS 388 (C.C.P.A. 1970).
- *The Proctor & Gamble Co. v. Johnson & Johnson Inc.*, 485 F.Supp. 1185, 1979 U.S. Dist. LEXIS 7736 (S.D.N.Y. 1979).
- *Causal Corner Assocs. v. Casual Stores of Nev., Inc.*, 493 F.2d 709 (9th Cir. 1974).
- *Central Manufacturing v. Brett*, 492 F.3d 876 (7th Cir. 2007).

## JURY INSTRUCTION NO. 16:  FRAUD

Prince Lionheart's trademark registration is invalid if:

1.     Prince Lionheart made a false representation of material fact to the
       Trademark Office;

2.     Prince Lionheart knowingly made a false, material misrepresentation with
       intent to deceive the Trademark Office;

3.     Prince Lionheart had an intent to induce the Trademark Office to act in
       reliance on the misrepresentation; and

4.     The Trademark Office was reasonable in relying on the misrepresentation.

If you conclude Halo Innovations has proven that Prince Lionheart committed

fraud in acquiring or maintaining its BACK TO SLEEP trademark, then Prince

Lionheart's trademark registration is invalid and cannot be used to support Prince

Lionheart's claim of ownership or validity of the mark.

---

Authority:
- J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §31:61 (4th ed. 2003).
- *In Re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009).
- *Medinol Ltd. v. Neuro Vasx, Inc.*, 67 U.S.P.Q.2d (BNA) 1205, 2003 WL 21189780, 2003 TTAB LEXIS 227 (T.T.A.B. 2003).
- *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 1 U.S. P.Q.2d 1483 (Fed. Cir. 1986).

**JURY INSTRUCTION NO. 17:   DEFENSES TO TRADEMARK INFRINGMENT -  FAIR USE**

I will now explain several defenses that Halo Innovations asserts in this case.  If you determine that any of these defenses apply, you do not need to evaluate whether Halo Innovations infringed Prince Lionheart's trademark or whether Halo Innovations violated the Colorado Consumer Protection Act.

Trademark law is intended to protect the ability of consumers to distinguish among competing producers, not to prevent all unauthorized uses of the trademark. Trademark rights cannot be used to stop an unauthorized use of the mark by another who is merely communicating ideas or expressing points of view.  Trademark law applies only where the public interest in avoiding consumer confusion outweighs the public interest in free expression.

Halo Innovations contends that it fairly used BACK TO SLEEP to remind parents and caregivers to place an infant on its back to sleep as part of the national First Candle/SIDS Alliance BACK TO SLEEP campaign. Halo Innovations has the burden of proving its fair use of the mark by a preponderance of the evidence.

I will explain two tests that you may apply to determine if Halo's use of BACK TO SLEEP was a fair use.  If you determine that Halo Innovations prevailed under either test, Halo's use was fair.

The first test is the balancing test referenced above.  You should balance the public interest in avoiding consumer confusion against the public interest in free speech. I will briefly discuss several non-exhaustive factors you should consider.

1.      Did  Halo  intend  to  take  advantage  of  goodwill  arising  from  Prince

Lionheart's use of BACK TO SLEEP?  If not, this factor weighs in favor of a fair use.

2.      Is Prince Lionheart's mark strong or weak?  I will explain how you determine the strength of a mark later during the Likelihood of Confusion analysis.  If you determine Prince Lionheart's mark is weak, this factor weighs in favor of a fair use.

3.      Is Halo Innovations using BACK TO SLEEP to convey a noncommercial message or idea?  If so, this factor weighs in favor of a fair use.  While commercial speech is speech made substantially out of economic motivation, speech does not become commercial merely because some economic benefit is associated with the speech.  For example, public interest messages are often placed on T-shirts.  The sale of the T-shirt does not convert the public interest message into commercial speech.

4.      Was the message or idea Halo Innovations attempted to convey with BACK TO SLEEP related to an important social issue?  If so, this factor weighs in favor of a fair use.

Now, I will explain the second test you may apply.  Halo's use of BACK TO SLEEP was a fair use if:

(1)  Halo used BACK TO SLEEP other than as a trademark;

(2)  Halo used BACK TO SLEEP descriptively to describe a service message; and

(3)  Halo's use was in good faith and not to derive benefit from Prince Lionheart's reputation or from association with Prince Lionheart's BACK TO SLEEP mark.

Halo's use of conspicuously visible trademarks, other than BACK TO SLEEP, that serve the function of identifying Halo as the source of its product weighs in

favor of finding that Halo's use of BACK TO SLEEP was not as a trademark.  If BACK TO SLEEP was used by Halo to describe an action that Halo hoped consumers would take using Halo's product, then its use was descriptive.

It is undesirable to allow anyone to obtain a complete monopoly on use of a descriptive term simply by using it first.  Terms that are descriptive may be trademarked, but the scope of the protection provided is limited to the secondary meaning associated with the mark.  Some possibility of consumer confusion is compatible with fair use.

If you find that Halo's use was fair under the test above, Prince Lionheart's registration is not conclusive proof of the validity of the BACK TO SLEEP trademark or Prince Lionheart's ownership of the mark or its exclusive right to use the mark.

If you determine that Halo Innovations has proven that its use of BACK TO SLEEP was a fair use under either test, you must find for Halo on all of Prince Lionheart's claims that relate to BACK TO SLEEP.

---

Authority:
- 15 U.S.C. § 1115(b)(4) (2008).
- *Ayers v. Chicago*, 125 F.3d 1010 (7th Cir. 1997).
- *Mattel v. MCA Records, Inc.*, 296 F.3d 902 (9th Cir. 2002).
- *Utah Lighthouse Ministry v. Found. for Apologetic Info.& Research*, 527 F.3d 1045 (10th Cir. 2008).
- *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915 (6th Cir. 2003).
- *U.S. West, Inc. v. F.C.C.*, 182 F.3d 1224 (10th Cir. 1999).
- *Hoepker v. Kruger*, 200 F. Supp. 2d 340 (S.D.N.Y. 2002).
- *Lyons P'ship, L.P. v. Giannoulas, et al.*, 14 F. Supp. 2d 947 (N.D. Tex. 1998).
- *Dessert Beauty v. Fox*, 568 F. Supp. 2d 416 (S.D.N.Y. 2008).
- *KP Permanent Make-up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111 (2004).

## JURY INSTRUCTION NO. 18:  ABANDONMENT

If Prince Lionheart abandoned its trademark, it cannot exclude others from using the BACK TO SLEEP trademark.   Halo Innovations contends that Prince Lionheart abandoned the BACK TO SLEEP trademark. The owner of a trademark abandons the right to exclusive use of the trademark when he or she discontinues its use in the ordinary course of trade, intending not to resume using it on the goods listed in the trademark registration, in this case, infant positioners consisting of flexible belts attached to diaper covers with hook-and-loop fasteners.

If the trademark is not used in commerce for three years, it is presumed that it is abandoned and that the owner did not intend to resume using it.   Use in commerce requires a bona fide use of the trademark as I explained in Instruction No. 14 and you should apply that definition in this instruction.

To overcome the presumption of abandonment, Prince Lionheart must provide concrete evidence that it intended to resume use of the mark in the reasonably foreseeable future on the infant positioners consisting of flexible belts attached to diaper covers with hook-and-loop fasteners described in Prince Lionheart's trademark registration.  Prince Lionheart's evidence must offer more than conclusory testimony to overcome the presumption.  For example, a statement that the owner did not intend to abandon the mark is not sufficient to show intent to resume use.  Obtaining a trademark registration for or using the mark on products other than the infant positioner described in the registration is also insufficient to show intent to resume use on the infant positioner itself.  Likewise, selling off inventory is not sufficient to prove intent to resume

use.  Without intent to resume use, a trademark registration cannot be preserved solely to prevent others from using the mark.

If you conclude that Halo Innovations has proven by a preponderance of the evidence that Prince Lionheart abandoned the BACK TO SLEEP trademark, you must find for Halo Innovations on all of Prince Lionheart's trademark claims.

---

Authority:
- 15 U.S.C. § 1127 (2008).
- *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531 (4th Cir. 2000).
- *Mele v. Davidson & Assocs.*, 79 U.S.P.Q.2d 1518, 2006 U.S. Dist. LEXIS 39054 (W.D.N.Y. 2006).
- ANNE GILSON LALONDE ET AL., GILSON ON TRADEMARKS §3.05[2]-[4], [7][a] (2007).
- *Intrawest Fin. Corp. v. W. Nat'l Bank of Denver*, 610 F.Supp. 950 (D.C. Colo. 1985).

**JURY INSTRUCTION NO. 19:  PRIOR USE**

Registration of the BACK TO SLEEP trademark is not conclusive proof of the validity of the BACK TO SLEEP trademark or Prince Lionheart's ownership of the mark or its exclusive right to use the mark if you find:

1. BACK TO SLEEP has been used by First Candle/SIDS Alliance continuously since before Prince Lionheart began using the mark;

2. First Candle/SIDS Alliance adopted the "BACK TO SLEEP" mark without knowledge of Prince Lionheart's use of the mark;

3. BACK TO SLEEP was adopted by Halo Innovations without knowledge of Prince Lionheart's use of the mark;

4. Halo Innovations has used the BACK TO SLEEP mark in the same way, with the same purpose as, and with encouragement from First Candle/SIDS Alliance; and

5. First Candle/SIDS Alliance's prior use was in the same area as Halo's use accused of infringement.

In other words if First Candle/SIDS Alliance used BACK TO SLEEP before Prince Lionheart, First Candle/SIDS Alliance has rights to BACK TO SLEEP that are superior to those of Prince Lionheart.  If you conclude that First Candle/SIDS Alliance authorized Halo Innovations to use BACK TO SLEEP as part of the First Candle/SIDS Alliance BACK TO SLEEP campaign during the period Prince Lionheart claims Halo infringed, then you must find for Halo on all of Prince Lionheart's claims that relate to BACK TO SLEEP.

<u>Authority:</u>

- 15 U.S.C. § 1115(b)(5) (2008).
- *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props.*, 616 F. Supp. 2d 622 (N.D. Tex. 2009).
- *GTE Corp. v. Williams,* 904 F.2d 536 (10th Cir. 1990).
- *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F.3d 427 (7th Cir. 1999).
- *Allard Entr. v. Advanced Programming Resources,* 249 F.3d 564 (6th Cir. 201).
- J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 16:18.50; §26:53.

**JURY INSTRUCTION NO. 20:  LACHES**

It is not permissible for a company to wait and see how successful his competitor will be, and then destroy, with the aid of the court, much of what the competitor has striven for and accomplished.  Laches prevents enforcement of rights when doing so would be unjust because of delay.  Laches applies if Prince Lionheart's delay in bringing suit was inexcusable and Halo Innovations was prejudiced by Prince Lionheart's delay.  A delay of more than three years after learning of Halo use of BACK TO SLEEP creates a presumption that Prince Lionheart's delay was unreasonable and that Halo was prejudiced by the delay.

This presumption means that, if you find that Prince Lionheart delayed more than three years after learning of Halo Innovations use of BACK TO SLEEP, Prince Lionheart must prove that the delay was reasonable *and* that Halo was not prejudiced by the delay.  A trademark owner's lack of money or financial troubles alone does not make a delay reasonable.  Prejudice caused by the delay may be shown simply by the accrual of additional damages during the period of delay.

If you conclude that laches applies, you must find for Halo Innovations on Prince Lionheart's claims relating to BACK TO SLEEP.

---

Authority:
- *Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362 (6th Cir. 1985).
- *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.,* 401 F.3d 123 (3d Cir. 2005).
- *Golden W. Brewing Co. v. Milonas & Sons, Inc.*, 104 F.2d 880 (9th Cir. 1939).
- *Baskin-Robbins Ice Cream Co., et al. v. The Pillsbury Co., et al.,* 1 U.S.P.Q.2d 1223, 1986 U.S. Dist. LEXIS 20423 (N.D. Tex. 1986).

**JURY INSTRUCTION NO. 21:  UNCLEAN HANDS**

If you conclude that Prince Lionheart acted unfairly, inequitably or in bad faith in its acquisition or enforcement of its BACK TO SLEEP trademark, you may find for Halo on all of Prince Lionheart's claims.

Halo asserts Prince Lionheart acted unfairly, inequitably and in bad faith by representing to the Patent and Trademark Office that Prince Lionheart had used the BACK TO SLEEP mark continuously in commerce five consecutive years prior to February 20, 2004 and that the mark was still in use in commerce.  Halo Innovations contends that Prince Lionheart's representations were false because Prince Lionheart's uses of the mark were token uses made merely to reserve a right in the "BACK TO SLEEP mark" and that such uses do not qualify as a use in commerce.

If you conclude Prince Lionheart acted unfairly, inequitably or in bad faith, you may deny Prince Lionheart recovery on all of its claims against Halo Innovations.

If you determine that any of the defenses I have just explained apply, then you need not consider Prince Lionheart's trademark infringement or Colorado Consumer Protection Act claims.  However, if you determine that the defenses do not apply, then you must consider whether Halo Innovations infringed Prince Lionheart's trademark.

I will now explain how you will determine if trademark rights have been infringed.

---

*Authority:*
- *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806 (1945).

**JURY INSTRUCTION NO. 22:  TRADEMARK INFRINGEMENT-GENERAL ELEMENTS AND BURDENS  (HALO INNOVATIONS)**

Halo Innovations claims Prince Lionheart has infringed its trademark rights.  To prevail on its trademark infringement claim, Halo must prove each of the following elements by a preponderance of the evidence:

1. SLEEPSACK is a valid, protectable trademark;

2. That Halo Innovations owns SLEEPSACK as a trademark for use on wearable blankets; and

3. Ordinary purchasers are likely to be confused by Prince Lionheart's use of SLEEPSACK on wearable blankets into believing that Prince Lionheart and Halo Innovations are affiliated companies or that Prince Lionheart's wearable blankets are sponsored, approved or licensed by Halo or that Prince Lionheart's wearable blankets are made by Halo.

If Halo has failed to prove any of these elements, your verdict should be for Prince Lionheart.

---

Authority:
- 15 U.S.C. §1125(a) (2008).
- *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778 (9th Cir. 2002).
- *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research,* 527 F.3d 1045 (10th Cir. 2008).

**JURY INSTRUCTION NO. 23:  VALIDITY OF UNREGISTERED TRADEMARK**

Because Halo Innovations does not have a registered trademark, it must prove by a preponderance of the evidence that the SLEEPSACK trademark is valid and owned by Halo.  Similarly, if you conclude that Prince Lionheart's registration for BACK TO SLEEP is invalid, Prince Lionheart cannot rely on its registration to prove validity or ownership and must otherwise prove that the BACK TO SLEEP trademark is valid and owned by Prince Lionheart.  Reference to Prince Lionheart and the BACK TO SLEEP trademark in this instruction assumes that you concluded Prince Lionheart's registration is invalid.

A valid trademark is a word or phrase that is either:

1.  inherently distinctive; or

2.  descriptive, but has acquired a secondary meaning.

Only a valid trademark can be infringed.  Only if you determine Halo Innovations proved by a preponderance of the evidence that SLEEPSACK is a valid trademark should you consider whether Halo owns it or whether Prince Lionheart's actions have infringed it.  Similarly, only if you determine Prince Lionheart proved by a preponderance of the evidence that BACK TO SLEEP is a valid trademark should you consider whether Prince Lionheart owns it or whether Halo's actions have infringed it.

Only if you determine that SLEEPSACK or BACK TO SLEEP are not inherently distinctive should you consider whether they are descriptive but became distinctive through the development of secondary meaning.

Authority:

- *Donchez v. Coors Brewing Co.,* 392 F.3d 1211 (10th Cir. 2004).
- *Taco Cabana Int'l, Inc., v. Two Pesos, Inc.,* 932 F.2d 1113 (5th Cir. 1991).
- *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research,* 527 F.3d 1045 (10th Cir. 2008).

**JURY INSTRUCTION NO. 24:  STRENGTH OF UNREGISTERED TRADEMARK (SPECTRUM OF MARKS)**

The strength of a mark is an important factor to consider in assessing its validity and in determining whether the accused infringer's use of the trademark creates for consumers a likelihood of confusion between the source of the goods.

Halo Innovations asserts SLEEPSACK is a valid and protectable trademark for its wearable blanket and that Prince Lionheart's use of those words in connection with its wearable blanket infringes Halo trademark and is likely to cause confusion about the origin of goods associated with the trademark.  Prince Lionheart asserts that SleepSack is not a valid trademark because it does not create a connection between Halo's wearable blanket and Halo Innovations in the mind of the consumer.

Again, if you concluded Prince Lionheart's registration is invalid, you must determine if Prince Lionheart has a valid and protectable common law rights in BACK TO SLEEP.  Prince Lionheart asserts BACK TO SLEEP is a valid and protectable trademark and that Halo's use of those words in connection with its wearable blanket infringes Prince Lionheart's trademark and is likely to cause confusion about the origin of goods associated with the trademark.  Halo Innovations asserts that BACK TO SLEEP is not a valid trademark because it does not create a connection between Prince Lionheart and its product in the mind of the consumer.

To determine if Halo Innovations has met its burden of showing that SLEEPSACK is a valid trademark, you should classify SLEEPSACK on the spectrum of trademark distinctiveness that I will explain in this instruction.  If you determined that Prince Lionheart's registration for BACK TO SLEEP is invalid, you should perform the

same classification for BACK TO SLEEP.

## Spectrum of Marks

Trademark law provides protection to distinctive or strong trademarks. Conversely, trademarks that are not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses. Trademarks that are not distinctive are not entitled to any trademark protection. In deciding trademark protectability you must consider whether a trademark is inherently distinctive. Trademarks are grouped into five categories according to their relative strength. These five categories are, in order of strength or distinctiveness: fanciful (which is inherently distinctive), arbitrary (which is inherently distinctive), suggestive (which also is inherently distinctive), descriptive (which is protected only if it acquires a "secondary meaning" in consumers' minds) and generic (which cannot serve as a trademark).

## Arbitrary and Fanciful Trademarks.

The first and second categories are considered "inherently distinctive" trademarks. They are considered strong marks and are clearly protectable. They involve the arbitrary, fanciful or fictitious use of a word to designate the source of a product. Such a trademark is a word that in no way describes or has any relevance to the particular product it is meant to identify. It may be a common word used in an unfamiliar way. It may be a newly created (coined) word or parts of common words which are applied in a fanciful, fictitious or unfamiliar way, solely as a trademark.

For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify personal computers that the

company sold. The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics. "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

### Suggestive Trademarks.

The next category of marks is suggestive trademarks. These trademarks are also inherently distinctive but are considered weaker than arbitrary trademarks. Unlike arbitrary trademarks, which are in no way related to what the product is or its components, quality, or characteristics, suggestive trademarks imply some characteristic or quality of the product to which they are attached. If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark does not describe the product's features, but suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the product to which the word is attached. For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple-A-Day" Vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple-a-day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" Vitamins.

**Descriptive Trademarks.**

The fourth category of marks is descriptive trademarks. These trademarks directly identify or describe some aspect, characteristic, or quality of the product to which they are affixed in a straightforward way that requires no exercise of imagination to be understood.

For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a product comes from, or the name of the person who makes or sells the product. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from. Similarly, a descriptive trademark can be the personal name of the person who makes or sells the product. So, if a farmer in Apple Valley, Judy Brown, sold her cider under the label "Judy's Juice" (rather than CranApple) she is making a descriptive use of her personal name to indicate and describe who produced the apple cider.

**Generic Trademarks**

The fifth category of trademarks is entitled to no protection at all. They are called generic trademarks and they give the general name of the product of the plaintiff.  They are part of our common language, which we need to identify all such similar products. They are the common name for the product to which they are affixed. It is the ˉgeneral name for which the particular product or service is an example.

It is generic if the term answers the question "what is the product being sold?" If

the average consumer would identify the term with all such similar products regardless of the manufacturer, the term is generic and not entitled to protection as a trademark. Clearly, the word apple can be used in a generic way and not be entitled to any trademark protection. This occurs when the word is used to identify the fleshy, red fruit from any apple tree.

The computer maker who uses that same word to identify the personal computer, or the vitamin maker who uses that word on vitamins, has no claim for trademark infringement against the grocer who used that same word to indicate the fruit sold in a store. As used by the grocer, the word is generic and does not indicate any particular source of the product. As applied to the fruit, "apple" is simply the common name for what is being sold.

---

Authority:
- *9th Circuit Model Civil Jury Instructions – Trademark* 15.9 [Infringement, Elements, Validity, Unregistered Mark, Distinctiveness] (1993).
- *Donchez v. Coors Brewing Co*., 392 F.3d 1211, 1216 (10th Cir. 2004).
- *Vail Assocs. v. Vend-Tel-Co., Ltd*., 516 F.3d 853 (10th Cir. 2008).

**JURY INSTRUCTION NO. 25:  STRENGTH OF UNREGISTERED TRADEMARK
(MARK DISTINCTIVENESS AND VALIDITY)**

If you decide the mark is arbitrary or suggestive, it is considered to be inherently distinctive. An inherently distinctive trademark is valid and protectable.

On the other hand, if you determine a mark is generic, it cannot be distinctive and therefore is not valid or protectable.  If you determine that the SLEEPSACK mark is generic, you must render a verdict for Prince Lionheart on the charge of infringement.  If you determine that the BACK TO SLEEP mark is generic, you must render a verdict for Halo Innovations on the charge of infringement.

If you decide a mark is descriptive, you will not know if the trademark is valid or invalid until you consider whether it has gained distinctiveness by the acquisition of secondary meaning.  To acquire secondary meaning, a descriptive mark must have been used so long and so exclusively by one producer with reference to his goods that the mark has come to mean that the article is his product to consumers.

You may consider the following when you determine whether the mark has achieved a secondary meaning:

1.  whether the people who purchase the good bearing the mark associate the good with the manufacturer;

2.  to what degree and in what manner the mark has been used in advertisement;

3.  whether the mark was successfully used to increase sales;

4.  the length of time and the manner in which the mark was used;

5.  whether the use was exclusive;

6.  whether the mark was intentionally copied; and

7.  any other factors that bear on secondary meaning, such as, whether the mark user actively monitored the market place to protect the mark from unauthorized use by third parties.

_____

Authority:

- *9th Circuit Model Civil Jury Instructions* – Trademark 15.11 [Infringement, Elements, Validity, Unregistered Mark, Distinctiveness], (1993).
- J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:12 (4th ed. 2003).
- *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research,* 527 F.3d 1045 (10th Cir. 2008).

**JURY INSTRUCTION NO. 26:  LIKELIHOOD OF CONFUSION**

Confusion occurs when consumers make an incorrect mental association between the involved commercial products and their producers.  Further, confusion results when a mark is likely to deceive purchasers or users as to the source, endorsement, affiliation, or sponsorship of a product.

If you determine that BACK TO SLEEP is a valid trademark owned by Prince Lionheart, you must determine whether Halo Innovations has used the trademark and whether such use is likely to cause confusion.  Similarly, if you determine that SLEEPSACK is a valid trademark owned by Halo, you must determine whether Prince Lionheart has used the trademark and whether such use is likely to cause confusion. Likelihood of confusion means there is a probability, not mere possibility, of confusion.

To determine whether likelihood of confusion exists between two marks, you should consider the following factors:

1.  the degree of similarity between the marks;

2.  the intent of the alleged infringer in adopting its mark;

3.  evidence of actual confusion;

4.  the similarity of the products and manner of marketing between the goods marketed by the competing parties;

5.  the degree of care likely to be exercised by purchasers;

6.  a parties delay in enforcing its rights after learning of a potential infringement; and

7.  the strength or weakness of the marks.

All of the factors are interrelated, but no one factor is dispositive.

### Degree of Similarity

The first factor in determining likelihood of confusion is the degree of similarity between the parties' trademarks, either common law trademarks or federally registered trademarks. In evaluating the degree of similarity between marks, you should examine them on three levels: sight, sound and meaning.  In considering the marks, similarities weigh more heavily than differences.

Marks must be considered in their entirety and as actually experienced by consumers in the marketplace. Thus, when considering the degree of similarity between two trademarks, you must determine whether the accused infringers mark will be confusing to consumers when considered alone. This is so because one often will not remember nuances of a mark or parts of a mark which are not dominant. Therefore, the law does not allow side-by-side comparison of marks when determining similarity. While the dominant portion is given greater weight, each mark must be considered as a whole.

### Intent

The second factor you must consider is the intent of the alleged infringer in adopting its mark. In making this determination, you may consider whether the alleged infringer intended to derive benefit from the trademark owner's reputation or goodwill or willfully disregarded the trademark owner's trademark rights. Deliberate adoption of a similar mark, standing alone, may justify an inference of likelihood of confusion.

The proper focus under this factor is whether the accused infringer had the intent to derive benefit from the reputation or goodwill of the trademark holder.

If the evidence indicates an accused infringer did not intend to derive benefits from a trademark owners existing mark, this factor weights against the likelihood of confusion.

**Actual Confusion**

The third factor you must consider is evidence of actual confusion within the marketplace. Evidence of actual confusion is not required to show that a likelihood of confusion exists, but it may be considered. In fact, it may be exceedingly difficult to detect instances of actual confusion in cases in which the goods are relatively inexpensive and have similar properties.

Isolated instances of actual confusion may be disregarded when the accused product and the trademarked product are not physically similar or are not used for similar purposes.

**Trade Channels**

As to the fourth factor, you should also look at how and to whom the parties' respective products are sold. If the parties' products are sold to, or used by, similar consumers or are distributed through similar trade channels, the likelihood of consumer confusion increases.

For clarification, "trade channels" means the way products ultimately get to a consumer, such as through retail store sales, internet sales, phone sales, or otherwise.

Direct competition between the parties, services, or products is not required in order to find a likelihood of confusion. When products or services are non-competing, the confusion at issue is one of sponsorship, affiliation, or connection.

The greater the similarity between the products, the greater the likelihood of confusion.  You should consider the similarity of the products and the similarity in the manner of marketing the products.  However, you must not confuse what products to consider in making this evaluation.  If you determined Prince Lionheart's trademark registration supports its claim that it owns a valid trademark for BACK TO SLEEP, you must compare the product described in that registration, an infant positioners consisting of flexible belts attached to diaper covers with hook-and-loop fasteners, to the Halo Innovations product accused of infringement.  If you determined that Prince Lionheart acquired common law rights to the BACK TO SLEEP mark, you must compare the products Prince Lionheart sold under the BACK TO SLEEP mark to acquire those rights with the Halo Innovations product accused of infringement.

Unless you determine that Prince Lionheart acquired rights to use the BACK TO SLEEP mark on wearable blankets before Halo began using BACK TO SLEEP on its wearable blankets, you should not compare Prince Lionheart's wearable blankets with Halo's wearable blankets in this analysis.

**Consumer Care**

The next factor requires you to consider and compare the prospective customers of both parties and how careful they may be in considering purchase or use of the parties' respective products. The degree of care exercised by prospective customers is a consideration because the lesser the degree of care exercised, the more likely it is for confusion, mistake, or deception to occur.   Items purchased on impulse are more likely to be confused that expensive items, which are typically chosen carefully.

**Delay**

The sixth factor in the likelihood of confusion analysis is a party's delay in enforcing its rights after learning of a potential infringement.  A party's delay in enforcing its trademark rights after learning of an alleged infringer is an objective indicator that the trademark owner did not believe confusion was likely.   The trademark owner is motivated to avoid confusion.   A significant delay in enforcing trademark rights after learning of an accused infringer weighs against finding a likelihood of confusion.

**Mark Strength**

The last factor is the strength or weakness of the mark.  To assess the strength of the mark, one must consider both conceptual strength, which is determined by the conceptual distinctiveness of the mark, and commercial strength, which is determined by the recognition value of the mark in the marketplace.

If you concluded Prince Lionheart's registration and incontestability are valid, they may be evidence of secondary meaning.  However registration and incontestability do not dictate the conclusion that the mark is strong with no further analysis. Additionally, registration and incontestability relate only to the good described in the registration and have no bearing on the strength the mark may have for goods other than those described.

I previously explained conceptual distinctiveness when I told you about distinctiveness and unregistered marks.

To assess the commercial strength of a mark, one looks at the evidence of real world recognition of the mark in the marketplace. Such evidence may include

advertising expenditures, and sales success, as well as other factors.  Substantial sales of a product bearing the mark weighs in favor of finding that the mark is strong.  The stronger the mark, the more likely it is that encroachment will produce confusion.

A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties. The greater the number of identical or more or less similar marks already in use on different kinds of goods, the less is the likelihood of confusion between any two specific uses of the weak mark.  In other words, use by others of a similar mark will tend to dilute any consumer recognition and association of that mark with its owner.

A trademark holder is required to properly police its mark. You should thus consider any activities a party may have undertaken to police unauthorized third-party use of its marks. By actively pursuing infringers, resulting in the elimination of infringing uses of similar marks on related goods, a party can further enhance the distinctiveness and thus the commercial strength of the mark. Efforts to protect trademarks, even aggressive ones, serve the competitive purpose of furthering trademark policies.

---

Authority:
- *Vail Assocs., Inc., et al. v. Vend-Tel Co., Ltd., et al.,* 516 F.3d 853 (10th Cir. 2008).
- *Yurman Studio, Inc., et al. v. Castaneda, et al.,* 591 F. Supp. 2d 471 (S.D.N.Y. 2008).
- *John Allan Co. v. The Craig Allen Co. L.L.C., et al.,* 540 F.3d 1133 (10th Cir. 2008).
- *Heartsprings, Inc. v. Heartspring, Inc.,* 143 F.3d 550 (10th Cir. 1998).
- *Gen. Motors Corp. v. Urban Gorilla, L.L.C.,* 500 F.3d 1222 (10th Cir. 2007).
- *Australian Gold, Inc., et al., v. Hatfield, et al.,* 436 F.3d 1228 (10th Cir. 2006).
- *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045 (10th Cir. 2008).

- *Beltronics USA v. Midwest Indus. Dist.*, 562 F.3d 1067 (10th Cir. 2009).

**JURY INSTRUCTION NO. 27:  TRADEMARK DILUTION GENERALLY**

Prince Lionheart claims that Halo Innovations has diluted the value of the BACK TO SLEEP trademark by lessening the capacity of the mark to identify and distinguish goods.  If Prince Lionheart's trademark is famous, Halo began using Prince Lionheart's trademark after it became famous, and Halo's use is likely to cause dilution of Prince Lionheart's famous mark, Halo may be liable for dilution, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

If you determine that Halo's use of BACK TO SLEEP was not purely commercial speech, in other words, that Halo's use of BACK TO SLEEP conveyed the First Candle/SIDS Alliance message, and was not used to indentify Halo as the source of its wearable blanket, you must find for Halo on Prince Lionheart's dilution claim.

---

Authority:
- 15 U.S.C. § 1127 (2008).
- 15 U.S.C. § 1125(c) (2008).
- *Smith v. Wal-Mart,* 537 F. Supp. 2d 1302 (N.D. Ga. 2008).
- *Griffith v. Fenrick,* 486 F. Supp. 2d 848 (W.D. Wis. 2007).
- *American Family Life Ins. v. Hagan,* 266 F. Supp. 2d 682 (N.D. Ohio 2002).
- *Mattel, Inc. v. MCA Records,* 296 F.3d 894 (9th Cir. 2002).

## JURY INSTRUCTION NO. 28:  FAME

Prince Lionheart must prove that its BACK TO SLEEP trademark is famous for it to prevail on its dilution claim.  The fame of the mark must arise from Prince Lionheart's use of the mark.  In other words, if the mark is widely known because of another's use and not because of Prince Lionheart's use, the mark is not famous for purposes of your analysis.

A mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, you may consider all relevant factors, including the following:

1.  The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties;

2.  The amount, volume, and geographic extent of sales of goods or services offered under the mark;

3.  The extent of actual recognition of the mark; and

4.  Whether the mark was registered.

Prince Lionheart must prove that its mark is widely recognized by the general consuming public of the United States as a designation indicating the source of its goods.  The mark must be famous to the whole consuming public of the entire United States.  Fame in just one geographic area, industry or line of business or only to professional buyers in one market niche is not sufficient.

Examples of famous marks include BOY SCOUTS OF AMERICA, BIG GULP,

NIKE, PEPSI, STARBUCKS, and VICTORIA'S SECRET.

If Prince Lionheart failed to prove that its mark is famous, then you must find for

Halo Innovations on Prince Lionheart's dilution claim.

---

Authority:
- 15 U.S.C. § 1125(c) (2008).
- *Accuride Int'l v. Accuride Corp.,* 871 F.2d 1531 (9th Cir. 1989).
- *IP Lund Trading Aps v. Kohler Co.,* 163 F.3d 27 (1st Cir. 1998).
- *TCPIP Holding Co. v. Haar Comm.,* 244 F.3d 88 (2d Cir. 2001).
- *Thane Int'l v. Trek Bicycle,* 305 F.3d 894, 2002 U.S. App. LEXIS 18344 (9th Cir. 2002).
- *King of the Mountain Sports v. Chrysler Corp.,* 968 F.Supp. 568 (D. Colo. 1997).
- *aff'd.,* 185 F.3d 1081 (10th Cir. 1999).
- *Board of Regents v. KST Elec.,* 550 F. Supp. 2d 657 (W.D. Tex. 2008).
- *Top Tobacco v. North Atlantic Operating Co.,* 509 F.3d 380 (7th Cir. 2007).
- *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 166 F.3d 191, 49 U.S.P.Q.2d 1493 (3d Cir. 1999).
- *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 57 F. Supp. 2d 155, 52 U.S.P.Q.2d 1143 (E.D. Pa. 1999).
- *Wrenn v. Boy Scouts of America,* 89 U.S.P.Q.2d 1039, 2008 U.S. Dist. LEXIS 91913 (N.D. Ca. 2008).

**JURY INSTRUCTION NO. 29:  DILUTION BY BLURING**

If you determine that Prince Lionheart's mark is famous, then you must determine if dilution occurred.   To prevail on its dilution claim, Prince Lionheart must prove the following:

1.  Prince Lionheart is the owner of a valid mark which qualifies as a "famous" mark as measured by the totality of the four factors mentioned above.   The same analysis for validity and ownership explained above should be applied to determine if BACK TO SLEEP is a valid trademark owned by Prince Lionheart;

2.  Halo Innovations is making use of BACK TO SLEEP as a mark or trade name in interstate commerce;

3.  Halo's use began after Prince Lionheart's mark became famous;

4.  Halo's use is likely to cause dilution by creating a likelihood of association with Prince Lionheart's famous mark arising from its similarity to Prince Lionheart's famous mark;

5.  that is likely to impair the distinctiveness of Prince Lionheart's famous mark.

The following factors should be considered as you evaluate the likelihood of causing dilution:

1.  The degree of similarity between Halo's use of BACK TO SLEEP and Prince Lionheart's famous mark;

2.  The degree of inherent or acquired distinctiveness of Prince Lionheart's famous mark;

3.  The extent to which Prince Lionheart is engaging in substantially exclusive use of the famous mark;

4.  The degree of recognition of Prince Lionheart's famous mark;

5.  Whether Halo Innovations intended to create an association with Prince Lionheart's famous mark.

6.  Any actual association between Halo's use of BACK TO SLEEP and Prince Lionheart's famous mark.

Prince Lionheart's delay in challenging Halo's use of BACK TO SLEEP is evidence that there is no dilution.

If Prince Lionheart fails to prove that Halo's use of BACK TO SLEEP is likely to cause dilution, you must find for Halo on Prince Lionheart's dilution claim.

---

Authority:
- *Network v. CBS, Inc.,* 54 U.S.P.Q.2d  (BNA) 1150, 2000 U.S. Dist. LEXIS 4751 (C.D. Cal. 2000).
- 15 U.S.C. § 1125(c) (2008).

**JURY INSTRUCTION NO. 30:  DILUTION DAMAGES**

Prince Lionheart may be awarded damages for dilution if it proves Halo Innovations first used the BACK TO SLEEP mark in commerce after October 6, 2006 and that Halo willfully intended to trade on the recognition of Prince Lionheart's famous mark.  If Prince Lionheart fails to prove either of these elements, you cannot award damages against Halo for dilution.

---

Authority:
- 15 U.S.C. § 1125(c) (2008).
- 15 U.S.C. § 1117 (2008).
- J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §24:132.

### JURY INSTRUCTION NO. 31:  INTENTIONAL INTERFERENCE WITH
### PROSPECTIVE BUSINESS

Prince Lionheart asserts that Halo Innovations improperly interfered with its ability to conduct business.  To prevail in its claim, Prince Lionheart must prove that Halo intentionally and improperly prevented formation of a contract.

Halo's conduct must have been wrongful.  A legitimate business activity intended to achieve an advantage over competitors, but which does not rely on improper methods, cannot provide a basis for liability even if harm results.  The crucial question in determining liability under this claim is whether Halo's interference was intentional and improper.

Prince Lionheart must show that Halo induced or otherwise caused a third party to not enter into or continue a future relation with Prince Lionheart by a preponderance of the evidence.  Prince Lionheart must also show that Halo's interference cause Prince Lionheart losses.  If Prince Lionheart has failed to prove Halo's conduct was intentional or improper or that Halo's conduct did not cause the third party to forego a contract with Prince Lionheart or that Prince Lionheart was damaged by Halo's conduct, you must find for Halo on this claim.

The following factors should be considered when determining if Halo Innovations conduct was improper or not:

1.  The nature of Halo's conduct;

2.  Halo's motive;

3.  The interests of Prince Lionheart;

4.  The interests sought to be advanced by Halo;

5. The social interests in protecting Halo's freedom of action and the contractual interests of Prince Lionheart;

6. The proximity or remoteness of the Halo's conduct to the alleged interference; and

7. The relationship between Halo and Prince Lionheart.

Conduct is intentional if a person acts or speaks for the purpose, in whole or in part, of bringing about a particular result, or if a person knows his or her acts or words are likely to bring about that result. It is not necessary that a person act or speak with malice or ill will, but the presence or absence of malice or ill will may be considered by you in determining if the conduct is intentional.

To prevail on this claim, Prince Lionheart must prove that there was a reasonable probability that a contract would have resulted if Halo had not acted improperly. Additionally, Prince Lionheart must prove that Halo knew, or was substantially certain, that its action would result in interference with Prince Lionheart's probable contract. If you determine that Halo had no desire to cause the interference or if Halo knew that the interference would be a mere incidental result of conduct it was engaging in for another purpose, you may find that the interference was not improper.

Halo Innovations cannot be held liable for this cause of action if:

1. The relation concerned a matter involved in the competition between Halo and Prince Lionheart;

2. Halo did not employ wrongful means;

3. Halo's actions did not create or continue an unlawful restraint of trade; and

4.  Halo's purpose was at least in part to advance its interest in competing with Prince Lionheart.

Examples of wrongful means include physical violence, fraud, civil suits and criminal prosecution.  Unless Prince Lionheart proves each element of this cause of action, you must find for Halo.

---

Authority:
- Colorado Form Jury Instructions:  CJI – Civ. 24:1, CJI 24:2, CJI 24:3.
- *Westfield Dev. V. Rifle Inv. Ass.,* 786 P.2d 1112 (Colo. 1990).
- *Watson v. Settlemeyer,* 372 P.2d 453 (Colo. 1962).
- *F. Harper, F. James & O. Gray, Torts* § 6.8 (2d ed. 1986).
- *Rinnander v. Denver Milk Products,* 114 Colo. 506, 166 P.2d 984 (1946).
- *Four Corners Nephrology Assoc. v. Mercy Med. Ctr.*, 2008 U.S. Dist. LEXIS 16709 (D. Colo. 2008).
- *MDM Group Assoc. v. CX Reinsurance Co.*, 165 P.3d 882 (Colo. App. 2007).
- *Netquote, Inc. v. Byrd*, 2008 U.S. Dist. LEXIS 46996 (D. Colo. 2008).
- *Campfield v. State Farm Mut. Auto Ins.*, 532 F.3d 1111 (10th Cir. 2008).
- *West Ridge Group v. First Trust Co.*, 2009 U.S. Dist. LEXIS 18177 (D. Colo. 2009).

**JURY INSTRUCTION NO. 32:  COLORADO CONSUMER PROTECTION ACT ELEMENTS OF LIABILITY**

For Prince Lionheart, to recover from Halo Innovations on the claim that Halo violated the Colorado Consumer Protection Act, you must find that all of the following have been proved by a preponderance of the evidence:

1)      After February 24, 2003, Halo engaged in a deceptive trade practice;

2)      The deceptive trade practice occurred in the course of Halo's business;

3)      The deceptive trade practice significantly impacted Colorado consumers;

4)      Prince Lionheart suffered injury in fact to a legally protected interest; and

5)      The deceptive trade practice caused actual damages or losses to Prince Lionheart.

If you find that any one of these statements has not been proved, then your verdict on this claim must be for Halo.

A person engages in a deceptive trade practice when, [PRINCE LIONHEART TO INSERT FROM CCPA STATUE . . . ].

A misrepresentation or false representation is a false statement that induces the person to whom it is made to act or to refrain from acting or has the capacity or tendency to attract consumers.

To prevail, Prince Lionheart must show that Halo knowingly engaged in a deceptive trade practice.  If you find that the representations made by Halo were honest mistakes or that Halo was merely negligent in making the representation, your verdict must be for Halo.

The Colorado Consumer Protection Act is not intended to provide additional

remedies to claimants whose disputes have no significant public impact but are purely private transactions.   Factors to be considered in determining whether there was significant public impact include: *(1)* the number of Colorado consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers; and (3) evidence that the challenged practice has previously impacted other consumers or has significant potential to do so in the future.   If you determine the acts Prince Lionheart has complained about do not have a significant impact on the Colorado public, you must find for Halo on Prince Lionheart's Colorado Protection Act Claim.

---

Authority:
- Colo. Rev. Stat. § 6-1-105, *et seq.*
- Colorado Form Jury Instructions:  CJI – Civ. 29:1; 29:2; 29:3; 29:4.
- *Crowe v. Tull,* 126 P.3d 196 (Colo. 2006).
- *MDM Group Assocs., Inc. v. Resortquest Int'l, Inc.,* 2009 U.S. Dist. LEXIS 82318 (D. Colo. 2009).
- *BMW of N. America, Inc. v. Gore, Jr.,* 517 U.S. 559 (1996).
- *Phillip Morris Inc,. et al. v. Reilly, et al.,* 113 F. Supp. 2d 129 (Mass. 2000).
- *Healy et al. v. The Beer Institute et al.,* 491 U.S. 324 (1989).
- *Friedman v. Boucher et al.,* 580 F.3d 847, (9th Cir. 2009).
- *New York Life Ins. Co. v. Head,* 234 U.S. 149 (1914).
- *Rhino Lining USA v. Rocky Mtn. Rhino Lining*, 62 P.3d 142 (Colo. 2003).
- *Giles v. Inflatable Store,* 2009 U.S. Dist. LEXIS 28382 (D. Colo. 2009).
- *Alpine Bank v. Hubbell,* 555 F.3d 1097 (10th Cir. 2009).
- *Campfield v. State Farm Mut. Auto. Ins.,* 532 F.3d 1111 (10th Cir. 2008).
- *Bonanno v. Quizno's Franchise Co.,* 2008 U.S. LEXIS 21678 (D. Colo. 2008).
- *Cahill v. American Family Mut. Ins.,* 2009 U.S. Dist. LEXIS 30453 (D. Colo. 2009).
- *R.W. Beck, Inc. v. E3 Consulting,* 577 F.3d 1133 (10th Cir. 2009).

**JURY INSTRUCTION NO. 33:  MEASURE OF DAMAGES INSTRUCTION**

I will now instruct you on the proper measure of damages, if any, to be recovered by Prince Lionheart or Halo Innovations should you find in their favor on one or more of their claims. The fact that I will instruct you on the proper measure of damages should not be considered as an indication of any view of mine as to which party is entitled to your verdict in this case. These instructions are given only for your guidance, in the event that you should find in favor of Prince Lionheart or Halo on the question of liability in accordance with the other instructions.

---

Authority:

- Judge Walker Miller's Form Instructions.

**JURY INSTRUCTION NO. 34:  DETERMINATION OF DAMAGES INSTRUCTION**

In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense.  You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence.  You may not award damages based on sympathy, speculation, or guess work.  On the other hand, the law does not require that Prince Lionheart or Halo Innovations prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

Authority:

- Judge Walker Miller's Form Instructions.

**JURY INSTRUCTION NO. 35:  TRADEMARK DAMAGES – ACTUAL OR STATUTORY NOTICE**

For Prince Lionheart to recover damages for infringement of its registered trademark, Prince Lionheart has the burden of proving by a preponderance of the evidence that Halo Innovations had either statutory or actual notice that Prince Lionheart's trademark was registered.

Halo had statutory notice if:

1. Prince Lionheart displayed with the trademark the words "Registered in U.S. Patent and Trademark Office"; or

2. Prince Lionheart displayed with the trademark the words "Reg. U.S. Pat. & Tm. Off."; or

3. Prince Lionheart displayed the trademark with the letter R enclosed within a circle.

---

Authority:
- 15 U.S.C. § 1111 (2008).

**JURY INSTRUCTION NO. 36:   TRADEMARK DAMAGES – TRADEMARK OWNER'S ACTUAL DAMAGES**

If you find for Prince Lionheart on its infringement claim and find that the Halo Innovations had statutory notice or actual notice of the Prince Lionheart's registered trademark, or if you determine that Halo competed unfairly by using BACK TO SLEEP you must determine Prince Lionheart's actual damages.

Similarly, if you find that Prince Lionheart competed unfairly by using SLEEP SACK, you must determine Halo actual damages.

If you determine that Prince Lionheart has failed to prove actual confusion by a preponderance of evidence then you may not award actual damages to Prince Lionheart.

Similarly, if you determine that Halo has failed to prove actual confusion by a preponderance of evidence then you may not award actual damages to Halo.

The party seeking damages has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate the party seeking damages for any injury that you find was caused by Halo's infringement of Prince Lionheart's registered trademark or unfair competition by using of BACK TO SLEEP or by Prince Lionheart's unfair competition by using SLEEP SACK.

You should consider the following:

1)      The injury to the injured party's reputation;

2)      The injury to the party's goodwill built in its trademark, including injury to

69

its general business reputation; and

3)      The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement.

When considering prospective costs (e.g., cost of future advertising), you must not overcompensate. Accordingly, your award of such future costs should not exceed the actual damage to the value of the party's mark at the time of the infringement.

---

Authority:

- *Brunswick Corp. v. Spirit Reel Co.,* 832 F.2d 513 (10th Cir. 1987).
- *Web Printing Controls v. Oxy-Dry Corp.,* 906 F.2d 1202 (7th Cir. 1990).
- J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:74.

**JURY INSTRUCTION NO. 37:  TRADEMARK DAMAGES, INTENTIONAL INFRINGEMENT**

If you find that Halo Innovations infringed Prince Lionheart's trademark, you must also determine whether Halo used the trademark intentionally, knowing it was an infringement with the intent to cause confusion and to trade off of the goodwill associated with Prince Lionheart's mark.   Intent requires something more than "indifference" – it must be a conscious desire.  Such conduct, if present, is referred to as willful infringement.

If you find that Prince Lionheart infringed Halo's trademark, you must also determine whether Prince Lionheart willfully infringed Halo's trademark.

Halo's reasonable good faith reliance on the advice of counsel is evidence that Halo's use of BACK TO SLEEP was not intentional or willful.   Prince Lionheart's reasonable good faith reliance on the advice of counsel is evidence that Prince Lionheart's use of BACK TO SLEEP SLEEPSACK was not intentional or willful.

---

Authority:
- *Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947 (7th Cir. 1992).
- *El Greco Leather Prods. v. Shoe World Inc.*, 726 F. Supp. 2d 25 (E.D.N.Y. 1989).
- *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567 (2d Cir. 1993).
- *Ringling Bros. Barnum & Bailey Combined Shows v. B.E. Windows Corp.*, 969 F. Supp. 901 (S.D.N.Y. 1997).
- *Cache La Poudre Feeds v. Land O'Lakes*, 438 F. Supp. 2d 1288 (D. Colo. 2006).

**JURY INSTRUCTION NO. 38:  TRADEMARK DAMAGES – DEFENDANT'S PROFITS**

If infringement is willful, in addition to actual damages, the trademark owner may be entitled to any profits earned by the infringer that are attributable to the infringement, which the trademark owner proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages. If you do not find the infringement willful, you cannot award the infringers profits as damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of the infringer's receipts from using the trademark in the sale of a product. The trademark owner has the burden of proving an infringers gross revenue by a preponderance of the evidence.

Expenses include all overhead and production costs incurred in producing the gross revenue. The infringer has the burden of proving the expenses and the portion of the profit attributable to factors other than use of the infringed trademark by a preponderance of the evidence.

---

Authority:
- 15 U.S.C. §1117 (2008).
- *Bishop v. Equinox Int'l,* 154 F.3d 1220 (10th Cir. 1998).
- *W. Diversified Serv. v. Hyundai Motor Am,* 427 F.3d 1269 (10th Cir. 2005).
- *Shoreline Dev. v. Cendant Corp.*, 2002 U.S. Dist. LEXIS 7836 (N.D. Ohio 2002).
- *Rolex Watch USA v. Meece, 158* F.3d 816 (5th Cir. 1998).
- *Cache La Poudre Feeds v. Land O'Lakes,* 438 F. Supp. 2d 1288 (D. Colo. 2008).
- J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:2.

**JURY INSTRUCTION NO. 39:  FALSE REGISTRATION**

If you determine that Prince Lionheart obtained or maintained its registration of the "BACK TO SLEEP trademark" in the Patent and Trademark Office by a false or fraudulent declaration or representation, Prince Lionheart is liable to Halo Innovations for any damages Halo has sustained because of Prince Lionheart's registration.  Halo must prove that the amount of its damage by a preponderance of the evidence.

---

Authority:
- 15 U.S.C. § 1120 (2008).

**JURY INSTRUCTION NO. 40:  INTENTIONAL INTERFERENCE WITH
PROSPECTIVE BUSINESS DAMAGES**

Prince Lionheart claimed that Halo Innovations intentionally interfered with its prospective business.  If you found that Prince Lionheart proved each element of its claim, you will need to determine the measure of damage due, if any.

Prince Lionheart has the burden of proving, by a preponderance of the evidence the nature and extent of its damages.  If you found in favor of Prince Lionheart, you must determine the total dollar amount of Prince Lionheart's damages, if any, that were caused by Halo Innovations intentional interference.

In determine these damages, you shall consider the following:

1)      Any non-economic losses or injuries that Prince Lionheart has had or probably will have in the future; and

2)      Any economic losses that Prince Lionheart has had or probably will have in the future.

If you find in favor of Prince Lionheart but do not find any actual damages, you shall award it nominal damages of one dollar.

---

Authority:
- Colorado Form Jury Instructions: CJI – Civ 24:7

**JURY INSTRUCTION NO. 41:  COLORADO CONSUMER PROTECTION ACT DAMAGES**

If you determine that Prince Lionheart has proven its Colorado Consumer Protection Act Claim, you must determine the total dollar amount of Prince Lionheart's actual damages in Colorado, if any, that was caused by Halo's violation of the Act. Prince Lionheart has the burden of proving its actual damage by a preponderance of the evidence.  Prince Lionheart must prove with reasonable certainty that the claimed damage arose from Halo's violation of the Act and that the damage either occurred in Colorado or that Halo Innovations did something in Colorado that caused the damage to occur outside Colorado.

If you determine that Halo has proven its Colorado Consumer Protection Act Claim, you must determine the total dollar amount of Halo's actual damages in Colorado, if any, that was caused by Prince Lionheart's violation of the Act.  Halo has the burden of proving its actual damage by a preponderance of the evidence.  Halo must prove with reasonable certainty that the claimed damage arose from Prince Lionheart's violation of the Act and that the damage either occurred in Colorado or that Prince Lionheart did something in Colorado that caused the damage to occur outside Colorado.

Any damage awarded under the Colorado Consumer Protection Act cannot be for conduct for which damages were awarded under another theory.

---

Authority:
- *MDM Group Assoc.'s, Inc. v. Resortquest Int'l, Inc.,* 2009 U.S. Dist. LEXIS 82318 (D. Colo. 2009).
- *Phillip Morris Inc. v. Reilly, et al.,* 113 F. Supp. 2d 129 (Mass. 2000).

- *Healy, et al. v. The Beer Inst., et al.,* 491 U.S. 324 (1989).
- *Friedman v. Boucher, et al.,* 580 F.3d 847 (9th Cir. 2009).
- *New York Life Ins. Co. v. Head,* 234 U.S. 149 (1914).

**JURY INSTRUCTION NO. 42**
**COLORADO CONSUMER PROTECTION ACT BAD FAITH**

If Prince Lionheart establishes, by clear and convincing evidence that Halo Innovations' conduct underlying Prince Lionheart's Colorado Consumer Protection Act claim was undertaken in bad faith, damages may be trebled. Bad faith conduct means fraudulent, willful, knowing, or intentional conduct that causes injury. Conversely, if you determine that Prince Lionheart brought this claim in bad faith or for the purpose of harassment or that the claim is groundless, Prince Lionheart will be liable for Halo's attorney's fees.

---

Authority:
- Colorado Form Jury Instructions: CJI – Civ. 29:6.

MERCHANT & GOULD P.C.

Attorneys for Defendant

By:    _s/ Kirstin L. Stoll-DeBell_
Kirstin L. Stoll-DeBell
Jon R. Trembath
MERCHANT & GOULD P.C.
1050 17th Street, Suite 1950
Denver, CO 80265-0100
Telephone: (303) 357-1670
Facsimile: (303) 357-1671
e-mail: kstoll@merchantgould.com
jtrembath@merchantgould.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2010, I served the foregoing **PROPOSED JURY INSTRUCTIONS** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following via e-mail:


J. Scott Lasater
lasoffice@aol.com

Dated:  January 25, 2010                    By: *s/  Kirstin L. Stoll-DeBell*
                                                        Kirstin L. Stoll-DeBell